**2018 UT App 112**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
STEPHANIE MARIE GALLEGOS,
Appellant.

Opinion
No. 20150881-CA
Filed June 14, 2018

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 131401054

Alexandra S. McCallum, Attorney for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1     During a birthday dance party gone wrong, Stephanie Marie Gallegos and a group of celebrators formed a semicircle around Victim and shouted expletives at her before breaking into an all-out melee. A member of the group hit Victim on the side of the head with a beer mug and pushed her over a table. Victim may have blacked out as she was kicked on the ground. A security video showed Gallegos eventually being pulled from the brawl. Victim sustained a broken nose, broken toe, a torn ear, and scrapes and bruises. The State charged Gallegos for her involvement in the beating, and a jury convicted her as an accomplice to assault. Gallegos appeals, contending that the evidence at trial was insufficient to support her conviction and

that the conviction should be reversed for prosecutorial misconduct. We affirm.

BACKGROUND[1]

¶2    Gallegos and a group of her friends were at a dance club celebrating Gallegos's birthday. Victim happened to be at the same club that evening. As Victim and her friend exited the restroom, the door swung open and bumped one of Gallegos's friends. A member of Gallegos's party warned Victim's friend to "watch yourself." Victim's friend apologized, but Gallegos's friend repeated her warning. Victim interjected, and Gallegos and her friends began to focus their aggression on her.

¶3    Gallegos and three other women stood up and formed a semicircle around Victim. They shouted profanities at Victim, who testified that she felt threatened by the group's verbal attacks. Gallegos's friend eventually shoved Victim, and Victim retaliated with a punch. A security video shows the group, including Gallegos, converging on Victim, advancing forward, and forcing Victim backward several feet toward a wall. One of the women hit Victim on the side of the head with a beer mug. Victim was eventually thrown over a table and toppled to the ground.

¶4    The women kicked and hit Victim and pulled her hair while she lay on the ground in a fetal position. Others joined the fight, but Victim could not see anyone's face because of her position. Victim testified that she "might have lost consciousness" during the brawl.

¶5    Security personnel eventually broke up the fight. The security video shows Gallegos being yanked from the fray.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948 P.2d 337, 339 (Utah 1997).

Victim was treated for a broken nose, a torn ear, and many scrapes and bruises. Three years after the attack, Victim still reported difficulty breathing as a result of her broken nose and doctors have recommended nasal surgery.

¶6    After the beating, Victim identified Gallegos as "one of the girls." Victim's friend and other club patrons also identified Gallegos as one of the people involved in the skirmish. Police detained Gallegos at the scene and the State eventually charged her with assault, which was enhanced to a third degree felony for having acted "in concert with two or more persons." *See* Utah Code Ann. § 76-3-203.1(2)(a) (LexisNexis 2017).

¶7    At trial, Gallegos moved for a directed verdict. She argued, "The State did not make a prima facie case that [she] assaulted the victim" and that "there's been no evidence that her activity led to the substantial bodily injury, or that there was any meeting of the minds, no testimony of people saying jump her, no party liability to attach that to." The trial court denied the motion.

¶8    Also at trial, the defense called Gallegos's friend (Witness), who was present during the altercation, to testify. Witness testified that she believed Gallegos jumped in to break up the fight rather than to assault Victim. However, Witness testified that Gallegos was hit in the face and eventually began throwing punches. Witness testified that the fight did not seem to be directed at a particular person, but rather was "all amongst themselves. . . . just arms flying and hitting whoever was the closest."

¶9    Finally, during rebuttal on closing argument, the State explained accomplice liability and argued,

> This is the same theory applied at a robbery. The getaway driver is just as guilty as the person who's inside. They may treat it differently in sentencing, but again you guys don't worry about sentencing.

> All you guys are there to determine is whether . . . she's guilty.

The State also offered during closing argument,

> This is, like I said, just a gang beating. In my opinion, not in a street gang sense of the term, but they are ganging up on her and attack her.

Gallegos did not object to either statement.

¶10    The jury returned a guilty verdict. Gallegos appeals.


ISSUES AND STANDARDS OF REVIEW

¶11    Gallegos raises two issues on appeal. First, she contends that the State presented insufficient evidence to support her assault conviction, and particularly that the evidence does not support that Gallegos "acted as an accomplice to the assault by 'intentionally aid[ing]' the principal actor in its commission." "We will reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which [she] was convicted." *State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94.

¶12    Second, Gallegos contends that the prosecutor engaged in misconduct during the State's closing rebuttal argument. Gallegos concedes that this challenge is unpreserved, and thus asks that we review it for plain error or ineffective assistance of counsel. "The plain error standard of review requires an appellant to show the existence of a harmful error that should have been obvious to the district court. An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ringstad*, 2018 UT App 66, ¶ 32 (cleaned up).

ANALYSIS

I. Preservation

¶13 We first address the State's threshold argument that Gallegos's challenge to the sufficiency of the evidence was unpreserved. After reviewing the record we are satisfied that Gallegos's contention was adequately preserved.

¶14 An issue is preserved if it is "presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (cleaned up). "For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion, (2) the issue must be specifically raised, and (3) the challenging party must introduce supporting evidence or relevant legal authority." *Id.* (cleaned up). "Further, where a motion for a directed verdict makes general assertions but fails to assert the specific argument raised on appeal, the directed verdict motion itself is insufficient to preserve the more specific argument for appeal." *State v. Bosquez*, 2012 UT App 89, ¶ 8, 275 P.3d 1032; *see also State v. Patrick*, 2009 UT App 226, ¶¶ 15–16, 217 P.3d 1150 (holding that a specific defense of habitation argument was not preserved by argument on a separate claim of self-defense).

¶15 Here, Gallegos "moved to dismiss," saying "the State did not make a prima facie case that defendant assaulted the victim" and "there's been no evidence that her activity led to the substantial bodily injury, or that there was any meeting of the minds, no testimony of people saying jump her, no party liability to attach that to." On appeal she rephrases her argument, contending that the evidence does not support the finding that her activities "amounted to intentionally aiding in the commission of the assault that caused [Victim] to suffer substantial bodily injury."

¶16 First, there is no question that Gallegos made a timely directed verdict motion. Second, we are satisfied that the issue

was specifically raised. On the surface, Gallegos's argument on appeal appears to shift its focus to challenge the State's evidence regarding intent. However, Gallegos's motion and arguments below are not so tangential that they do not mirror the specific arguments on appeal. Though worded differently and cursorily, the argument below was that the evidence adduced at trial was insufficient to meet the elements of the offense, and particularly that there was no "meeting of the minds." The same is being argued here with more flesh on the bone. Third, we are also satisfied that Gallegos adequately supported her motion with appropriate legal authority. Although Gallegos phrased her motion as a motion to dismiss, there is no question, in context, that she made a motion for a directed verdict based on the sufficiency of the evidence.

¶17    Accordingly, we are satisfied that Gallegos preserved her challenge to the sufficiency of the evidence. We thus consider the challenge on its merits.

## II. Sufficiency of the Evidence

¶18    Gallegos contends that the evidence presented by the State at trial was insufficient to support her conviction as an accomplice to assault. She argues that the evidence at trial could not establish that she "intentionally aided in the commission of the assault." Because there was an "absence of direct evidence," she asserts that the jury could only reasonably infer her "passive presence" during the brawl, it being equally likely that her motive was to break up the fight as it was to join it. We disagree.

¶19    On appeal, Gallegos does not dispute that the trial evidence established that the underlying assault occurred. Nor does she challenge the group enhancement. We therefore examine only the law as it pertains to liability for accomplice to assault. "Every person, acting with the mental state required for the commission of an offense who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." Utah Code

Ann. § 76-2-202 (LexisNexis 2017). Because the statute governing assault does not include a prescribed mental state, *see id.* § 76-5-102, the mental state applied to assault is "intent, knowledge, or recklessness," *see id.* § 76-2-102. Thus, the State had to prove beyond a reasonable doubt that Gallegos intentionally aided another in committing assault and that she intended, knew, or was reckless that her conduct would result in the commission of the assault. *See State v. Jeffs*, 2010 UT 49, ¶¶ 44–45, 243 P.3d 1250 (explaining the mental state required for accomplice liability for a rape charge).

¶20 Intent is subjective and thus is rarely established by direct evidence. *State v. Holgate*, 2000 UT 74, ¶ 26, 10 P.3d 346.

> It is well established that intent can be proven by circumstantial evidence. When intent is proven by circumstantial evidence, we must determine (1) whether the State presented any evidence that [the defendant] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent.

*Id.* ¶ 21 (cleaned up).

¶21 We conclude that the State presented sufficient evidence for the jury to reasonably infer that Gallegos acted with the requisite intent. The jury heard testimony that Gallegos joined her friends in forming a semicircle around Victim while shouting profanities at her. Victim testified that all of the women were "aggressive" towards her. The security video showed Gallegos and her friends advancing in unison toward Victim, forcing her backward several feet, and corralling her near a wall where Victim was eventually thrown over a table. Gallegos's friend testified that Gallegos began swinging her arms during the ensuing melee. The security video also showed security personnel throw Gallegos from the fight.

¶22    This evidence does not show that Gallegos was merely present, as she claims. Gallegos relies on *In re M.B.*, 2008 UT App 433, 198 P.3d 1007, in which this court concluded that the evidence was insufficient to convict the defendant as an accomplice to burglary "based on his mere passive presence in the passenger seat of the getaway car." *Id.* ¶ 27. In that case, a witness saw two men late one night, one climbing out of the back of her truck's camper shell and another exiting through the truck door while carrying a stereo and CDs. *Id.* ¶ 2. When the two men returned to their car parked across the street, the dome light revealed a third man, the defendant, "[j]ust sitting" in the passenger seat. *Id.* The defendant was adjudicated delinquent in juvenile court for vehicle burglary and theft. *Id.* ¶ 4. Under those circumstances, this court reversed the defendant's adjudication, reasoning that the State had not presented evidence suggesting that the defendant "actually behaved as a lookout or otherwise aided or encouraged the crimes of vehicular burglary and theft." *Id.* ¶¶ 11, 17.

¶23    The facts in this case are dissimilar. Unlike the defendant in *In re M.B.*, Gallegos was not just sitting at the club during the altercation. Instead, Gallegos helped form a semicircle around Victim and aggressively shouted profanities at her. Victim was pushed and then retaliated, at which point Gallegos and her group simultaneously advanced on Victim, forcing her back several feet and onto the ground. Gallegos threw punches during the brawl and had to be pulled away by security. The jury could reasonably infer that Gallegos was more than passively present.

¶24    This court has made clear that, "while mere presence at the scene of a crime affords no basis for a conviction, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *American Fork City v. Rothe*, 2000 UT App 277, ¶ 7, 12 P.3d 108 (cleaned up). The evidence here supports an inference that Gallegos intentionally aided another in committing assault and intended, knew, or was reckless that

her conduct would result in commission of an assault by another. As explained, Gallegos acted aggressively toward Victim, advancing with the group while forcing Victim backward toward a wall. Gallegos's aggression continued as she swung her arms and was pulled away from the fight. The only evidence proffered supporting the theory that Gallegos attempted to break up the fight was the testimony of Witness. But the jury was not obligated to believe that testimony.

¶25 In light of the evidence, we conclude that the jury could reasonably infer that Gallegos intended to aid in the assault of Victim. Therefore, the jury's verdict was supported by sufficient evidence.

### III. Prosecutorial Misconduct

¶26 Gallegos next contends that her conviction should be reversed based on inappropriate comments made by the prosecutor during closing argument. Particularly, Gallegos argues that the State's reference to a "gang beating" and suggestion that an accomplice might be treated differently at sentencing improperly "encouraged the jurors to consider matters outside the evidence." We disagree that the State's reference to a "gang beating" was improper. Although we agree with Gallegos that the State's reference to sentencing was improper, we disagree that it was so prejudicial that it warrants reversal.

¶27 Gallegos concedes that her prosecutorial-misconduct contention was not raised at trial. She therefore requests that we review her contention in the context of plain error and ineffective assistance of counsel. To establish plain error, Gallegos must demonstrate that an error exists, the error should have been obvious to the trial court, and the error is harmful. *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276. Specifically, when analyzing prosecutorial misconduct for plain error, we analyze not only whether the prosecutor's remarks were improper, i.e., whether an error exists, but also whether the prosecutor's

remarks were "so egregious that it would be plain error *for the district court* to decline to intervene *sua sponte*." *State v. Hummel*, 2017 UT 19, ¶ 110, 393 P.3d 314 (emphasis in original). A prosecutor's remarks merit reversal when "the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict." *State v. Valdez*, 513 P.2d 422, 426 (Utah 1973). Under plain error, such an error is prejudicial "when absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Ringstad*, 2018 UT App 66, ¶ 57 (cleaned up).

¶28 To show ineffective assistance, Gallegos must demonstrate that her counsel's performance was "so deficient as to fall below an objective standard of reasonableness" and "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321 (cleaned up). We analyze the instances of alleged misconduct in turn.

A. The State's Reference to a Street Gang

¶29 The State said the following during closing argument:

> This is, like I said, just a gang beating. In my opinion, not in a street gang sense of the term, but they are ganging up on her and attack her.

¶30 To be sure, no evidence was presented regarding street gangs. However, the facts of the case are that a group of women ganged up in a colloquial sense against Victim. Thus, the evidence presented at trial could be characterized as a gang or group beating. The State used the term "street gang" only to clarify that its use of the term "gang beating" was not meant to suggest that the crime was gang-related but instead referred only to the manner in which the group ganged up on Victim. Because the evidence supported a finding that the group

"ganged up" on Victim, we conclude that the reference did not call attention to matters that the jurors would not be justified in considering. Therefore there was no error and this argument fails under plain error and ineffective assistance of counsel.

B.     The State's Reference to Sentencing

¶31     The State's reference to possible differences in sentencing is another story. The State made the following reference to sentencing during its closing argument:

> This is the same theory applied at a robbery. The getaway driver is just as guilty as the person who's inside. They may treat it differently in sentencing, but again you guys don't worry about sentencing. All you guys are there to determine is whether . . . she's guilty.

¶32     "Possible punishment . . . is usually not a proper matter for jury consideration." *State v. Cude*, 784 P.2d 1197, 1202–03 (Utah 1989). The State had no business bringing up sentencing at all; the reference added nothing to help jurors understand a hypothetical about a robber and a getaway driver or how those facts pertain to this case. And while the State reiterated the law, saying "you guys don't worry about sentencing," the fact of the matter is that the remark "call[ed] to the attention of the jurors matters which they would not be justified in considering in determining their verdict." *See State v. Valdez*, 513 P.2d 422, 426 (Utah 1973).

¶33     But our analysis does not end there. Whether under plain error or ineffective assistance, Gallegos must demonstrate that absent the error there is a reasonable likelihood that she would have received a more favorable outcome at trial. *See Ringstad*, 2018 UT App 66, ¶ 68 (explaining that a defendant is prejudiced under plain error when "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant" (cleaned up)); *State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321

(explaining that a defendant is prejudiced under ineffective assistance where "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different" (cleaned up)). We conclude that even if the trial court erred by not intervening, and even if defense counsel was deficient for not objecting, Gallegos was not prejudiced because there is no reasonable likelihood that without the statement she would have received a more favorable outcome. *See Ringstad*, 2018 UT App 66, ¶ 68 (analyzing prejudice without deciding whether an error occurred).

¶34   We think it highly unlikely that, absent the comment, there is a reasonable likelihood of a more favorable outcome for Gallegos. In so concluding, we find the reasoning in *People v. Wrest*, 839 P.2d 1020 (Cal. 1992), persuasive. In that case, the prosecutor argued in favor of the death penalty by telling the jury what was *not* being argued. *Id.* at 1028. Particularly, the prosecutor said he would not argue that the Bible supports the death penalty and that he would not argue about deterrence, each of which the court ruled was improper. *Id.* The court reasoned that the prosecutor's arguments "embod[ied] the use of a rhetorical device—paraleipsis—suggesting exactly the opposite. Repetition of the statement, 'I am not arguing X,' strongly implied the prosecutor was in fact asserting the validity and relevance of X, but, for lack of time, was concentrating on other, presumably more important topics." *Id.* Nevertheless, the court held that the prosecutor's comments were not prejudicial, reasoning,

> The brief reference to deterrence was immediately undermined by the prosecutor himself, who represented that evidence existed on both sides of the issue and then immediately reminded the jury of its duty to judge this defendant as an individual in the context of his crimes. The reference came in the course of a long argument, the bulk of which was properly and specifically focused on the factors in aggravation and mitigation. . . . The same

> can be said of the prosecutor's brief reference to Scripture, which was totally undeveloped in the course of the argument.

*Id.* at 1028–29.

¶35 The State's reference to sentencing here—telling the jury not to worry about sentencing after raising the possibility that accomplices may be treated differently—is similar to the prosecutor's statement in *Wrest*. The State's comment about sentencing was a single sentence, which it recanted immediately after uttering it. Further, the court properly instructed the jury not to consider what punishment could result from a guilty verdict, and "we presume that the jury follows such instructions," absent evidence to the contrary. *State v. Fairbourn*, 2017 UT App 158, ¶ 37, 405 P.3d 789 (cleaned up). These facts weigh in favor of concluding that the jury was not influenced by the prosecutor's improper statement, *see State v. Calliham*, 2002 UT 86, ¶ 65, 55 P.3d 573 ("[W]e assume that the jury was properly instructed by the court on the intent element of accomplice liability, and was therefore unlikely to be misled by a single sentence from the prosecutor's argument, taken out of context."), and thus there is little likelihood that absent the statement there would have been a more favorable result.

¶36 We also note that the evidence against Gallegos in this case weighed heavily against her. *See supra* Part II. "In analyzing the potentially prejudicial effect of a prosecutor's comments, we look at the evidence of the defendant's guilt. If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial, but when the evidence is less compelling we will more closely scrutinize the conduct." *State v. Cuaquentzi*, 2015 UT App 311, ¶ 7, 365 P.3d 735 (cleaned up). Because the proof of Gallegos's guilt is strong, we do not presume that the State's remark was prejudicial.

¶37 In light of the evidence before the jury and the context of the State's remark regarding sentencing, we conclude that the

statement was not prejudicial. Accordingly, even if we assume the court's failure to intervene constituted error, or if we were to conclude that defense counsel's failure to object constituted deficient performance, we would still affirm.

CONCLUSION

¶38   In sum, the evidence presented at trial was sufficient to support Gallegos's conviction. Further, the State's improper remark during closing arguments was not so prejudicial that, absent the error, the outcome would likely have been more favorable for Gallegos.

¶39   Affirmed.

_____