**2022 UT 22**

IN THE

**SUPREME COURT OF THE STATE OF UTAH**

STATE OF UTAH,
*Respondent,*

*v.*

AARON JAY PIERCE,
*Petitioner.*

No. 20200864
Heard March 16, 2022
Filed June 9, 2022

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Vernice S. Trease
No. 161906005

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Solic. Gen., Salt Lake City, for respondent

Nathalie Skibine, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court in which JUSTICE PEARCE, JUDGE WALTON, AND JUDGE CHIARA joined.

JUSTICE PETERSEN filed a concurring opinion.

Having recused himself, ASSOCIATE CHIEF JUSTICE LEE does not participate herein; DISTRICT JUDGE JOHN J. WALTON sat.

Due to his retirement, JUSTICE HIMONAS did not participate herein; DISTRICT JUDGE SAMUEL P. CHIARA sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 While riding as a passenger in his brother's truck, Aaron Jay Pierce engaged in a heated argument with a man riding on a longboard, Maluolefale Toala. The argument escalated, and Mr. Pierce eventually exited the truck, gun in hand, and shot Mr. Toala. Mr. Toala died of gunshot wounds, and the State charged Mr. Pierce with murder.

¶2 Shortly after the shooting and after receiving *Miranda* warnings, Mr. Pierce spoke with law enforcement and claimed generally that he killed Mr. Toala in self-defense. The district court eventually suppressed Mr. Pierce's statements to police as being obtained in violation of his constitutional rights.

¶3 Because Mr. Pierce shot Mr. Toala at a crowded intersection, the State called more than a dozen witnesses to provide testimony on the events surrounding the shooting. Though these witnesses generally agreed that Mr. Pierce and Mr. Toala engaged in a heated argument and that Mr. Pierce shot Mr. Toala, their testimonies differed in several important ways—particularly as to whether Mr. Toala was aggressive or threatening toward Mr. Pierce. Mr. Pierce moved for a directed verdict after the State's case in chief, arguing that the evidence was insufficient to prove that Mr. Pierce was not acting in self-defense. The district court denied the motion.

¶4 Mr. Pierce took the stand at trial. He testified that Mr. Toala was being aggressive, had shouted several times "I'm going to f*** you up motherf***er," had threatened Mr. Pierce's brother, and was in the act of swinging his longboard at Mr. Pierce when Mr. Pierce shot. The State impeached Mr. Pierce's testimony by pointing out that it contained significantly more exculpatory detail than the story he provided to the police. The jury convicted Mr. Pierce of manslaughter based on imperfect self-defense.

¶5 Mr. Pierce appealed to the court of appeals, arguing that the district court erred in denying his motion for directed verdict and that the State's impeachment improperly commented on his right to remain silent. The court of appeals affirmed in an unpublished order.

¶6 Mr. Pierce now asks us to reverse the court of appeals, arguing it erred in affirming the denial of his motion for directed verdict and by holding that the State's impeachment did not violate his constitutional rights. We affirm. Because Mr. Pierce did not object

to the State's impeachment, we review his constitutional claim for plain error, which requires that any alleged error must have been obvious to the district court.[1] Even assuming it was error for the district court to allow the State's impeachment, because the law on the issue is unsettled, any alleged error would not have been obvious to the district court. We also affirm the district court's denial of Mr. Pierce's motion for directed verdict because sufficient evidence exists to support the jury's verdict of manslaughter by imperfect self-defense.

## Background

¶7 On May 28, 2016, Mr. Pierce was riding as a passenger in a pickup truck driven by his brother (Brother). The truck was pulling a trailer because Mr. Pierce was helping Brother move. Mr. Toala walked past the truck carrying a longboard, and Brother made a loud yelping noise that startled Mr. Toala. Mr. Toala followed the truck until it stopped at a busy intersection, after which a verbal argument ensued that eventually concluded with Mr. Pierce exiting the vehicle, gun in hand, and shooting Mr. Toala. Mr. Toala died from gunshot wounds.

¶8 Police arrived at the scene shortly after the shooting. Mr. Pierce was identified as a suspect, and he told the police he wanted a lawyer. Mr. Pierce was transported to the police station, was informed of his *Miranda* rights, and agreed to speak. Mr. Pierce gave his account of what happened to the police and claimed he shot Mr. Toala in self-defense. But the statements were later suppressed after the district court found the police impermissibly questioned Mr. Pierce after he requested an attorney.

¶9 The State charged Mr. Pierce with murder. At trial, the State called thirteen witnesses (consisting of motorists and other individuals at the scene) to testify about the shooting. Their accounts varied. Though nearly all testified that Mr. Pierce and Mr. Toala were yelling at each other, none could make out exactly what was said. Some testified that Mr. Toala was being aggressive and had threatened Mr. Pierce with his longboard, while others testified that Mr. Toala was not being aggressive and had never threatened Mr.

---

[1] To prevail on plain error review, a defendant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Van Huizen*, 2019 UT 1, ¶ 30, 435 P.3d 202 (alteration in original) (citation omitted).

Pierce. Witness testimony also varied regarding how far apart Mr. Pierce and Mr. Toala were during the argument, with distances ranging between inches and eighteen to nineteen feet.

¶10 Most importantly, the witnesses differed in their accounts of what Mr. Toala was doing with his longboard when Mr. Pierce fired the gun. Many witnesses testified that Mr. Toala was holding up the longboard defensively as a shield. Others testified that Mr. Toala was making threatening gestures after Mr. Pierce pulled out the gun. Forensic evidence (and the longboard itself) confirmed that Mr. Toala was shot through the longboard, but a few witnesses testified that the longboard could not have been hit by a bullet.

¶11 Mr. Pierce moved for a directed verdict after the State's case in chief, arguing that the evidence was insufficient to prove Mr. Pierce was not acting in self-defense at the time of the shooting. The district court denied the motion.

¶12 Mr. Pierce then testified. He said that after Brother yelped and startled Mr. Toala, Mr. Toala yelled "f*** you punk" and flipped them off. Mr. Toala then followed them to an intersection, and when he caught up to the truck, Mr. Pierce said Mr. Toala forcefully punched the trailer. According to Mr. Pierce, Mr. Toala then yelled "I'm going to f*** you up, motherf***er" and picked up his longboard as if to spear Mr. Pierce in the face through the passenger window. Mr. Pierce then tried to roll up his window but was unable to. It was at this point that Mr. Pierce claimed he exited the truck with his gun and told Mr. Toala to "back the f*** up" and "get on the ground." In response to Mr. Pierce pulling out a gun, Mr. Pierce testified that Mr. Toala screamed "shoot me" and started yelling "[f]*** you too, punk. I'll get you too" at Brother. Mr. Pierce claimed he screamed at Mr. Toala to stop, to which Mr. Toala responded by yelling "I'm going to f*** you up, motherf***er. Shoot me." Mr. Pierce then testified that he tried to get back in the truck, which prompted Mr. Toala to yell "[s]hoot me you bitch" and "I'll f*** you up motherf***er." Mr. Pierce claimed Mr. Toala then swung the longboard at him, at which point Mr. Pierce shot Mr. Toala.

¶13 The State cross-examined Mr. Pierce, seeking to undermine his credibility by pointing out that his trial testimony contained substantially more detail than his statements to the police on the day of the shooting. Specifically, the State pointed out that although Mr. Pierce used the word "f***" three times with the police, he never told them that Mr. Toala yelled "I'm going to f*** you up, motherf***er." The State also questioned Mr. Pierce about the fact that he never

4

mentioned to the police that he could not roll up his window. During closing argument, the State again focused on the differences between Mr. Pierce's statements to the police and his trial testimony, stating that "[i]t's amazing that most of the story that you heard from [Mr. Pierce] on the stand was not told" to police. Mr. Pierce's attorney did not object to the State's questioning or its comments during closing argument.

¶14 The jury found Mr. Pierce guilty of manslaughter based on imperfect self-defense, meaning it found that Mr. Pierce "acted under a reasonable belief that the circumstances provided a legal justification" for shooting Mr. Toala but that the shooting "was not legally justifiable or excusable under the existing circumstances." Mr. Pierce appealed to the court of appeals and challenged his conviction on two grounds. First, he argued that the evidence was insufficient to support the conviction because (1) witness accounts supporting the verdict were inherently improbable and (2) the verdict was based on speculation and conjecture. Second, Mr. Pierce argued the State violated due process by commenting on the differences between his statements to the police and his trial testimony, which he claimed was an improper comment on his right to remain silent.

¶15 The court of appeals upheld Mr. Pierce's conviction in an unpublished order of affirmance. It first held that Mr. Pierce's inherent improbability argument was unpreserved, so it reviewed the issue for plain error. The court determined that no witness account rose to a "level of physical impossibility or apparent falsehood" that would render the account inherently improbable, and it held that it was "for the jury to resolve the differences and conflicts in the evidence." The court then disposed of Mr. Pierce's speculation and conjecture argument by holding that the fact that "the jury was called upon to resolve conflicts in the evidence does not render its verdict speculative."

¶16 The court of appeals next addressed Mr. Pierce's argument that the State improperly commented on his silence by highlighting the differences between his trial testimony and his statements to police, reviewing the issue for plain error because Mr. Pierce's attorney never objected to the State's comments. The court determined that no error occurred because the State commented on "Mr. Pierce's statements, not his silence."

¶17 Mr. Pierce petitioned for certiorari, which we granted. He argues that (1) the State violated due process by commenting on the differences between his statement to police and his trial testimony

and (2) the district court erred in denying his motion for directed verdict because the evidence was insufficient to support his conviction. We have jurisdiction to hear this case under Utah Code section 78A-3-102(3)(a).

## Standard of Review

¶18 "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the trial court's decision under the appropriate standard of review."[2] Though we typically review constitutional issues for correctness,[3] because Mr. Pierce's due process claim is unpreserved, we review the issue for plain error.[4] "We review a trial court's ruling on a motion for directed verdict for correctness."[5]

## Analysis

¶19 Mr. Pierce makes two overarching arguments for why his manslaughter conviction should be overturned. First, he argues the district court committed plain error by not *sua sponte* cutting off the State's questions and comments on the differences between Mr. Pierce's trial testimony and his statements to police. And second, he argues the district court erred in denying his motion for directed verdict because the evidence was insufficient to prove beyond a reasonable doubt that he was not acting in self-defense when he shot Mr. Toala.

¶20 We affirm. Mr. Pierce has failed to convince us that the district court committed plain error in allowing the State's use of Mr. Pierce's pre-trial statements to police because, even assuming a constitutional violation occurred, any alleged violation would not have been obvious to the district court. And we also hold that the

---

[2] *Bountiful City v. Baize*, 2021 UT 9, ¶ 31, 487 P.3d 71 (citation omitted).

[3] *Salt Lake Legal Def. Ass'n v. Atherton*, 2011 UT 58, ¶ 9, 267 P.3d 227 ("The question of whether a district court erred in its application of a constitutional protection presents a question of law, which we review for correctness.").

[4] *State v. Bond*, 2015 UT 88, ¶ 44, 361 P.3d 104 ("[W]e hold that unpreserved federal constitutional claims . . . are to be reviewed under our plain error doctrine.").

[5] *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168.

evidence is sufficient to support the jury's verdict that Mr. Pierce committed manslaughter based on imperfect self-defense.

## I. The District Court Did Not Plainly Err

¶21 After Mr. Pierce testified at trial, the State impeached his testimony by highlighting the fact that his trial testimony contained significantly more exculpatory detail than his statements to police, particularly the fact that he never told the police that Mr. Toala had shouted "I'm going to f*** you up motherf***er." And in closing argument, the State again emphasized the differences between the two accounts. Mr. Pierce argues the State violated his due process rights by highlighting what he did not say to police after he had received *Miranda* warnings, which he claims constitutes an improper comment on his silence under *Doyle v. Ohio.*[6] Specifically, Mr. Pierce argues that because his trial testimony is not inconsistent with his statements to police, the State could not impeach his trial testimony by noting that it contained additional exculpatory details. Because Mr. Pierce's attorney did not object to the State's questions and comments on the differences between Mr. Pierce's trial testimony and his statements to police, we review this issue for plain error.

¶22 To prevail on plain error review, a defendant must establish that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant."[7] We decline to address whether an error exists because, even assuming that the State's use of Mr. Pierce's pre-trial statements violated due process, any alleged error would not have been obvious to the district court.

¶23 Under a plain error standard of review, "[a]n error is obvious only if the law governing the error was clear at the time the alleged error was made."[8] We hold that the law governing the error was not clear at the time of Mr. Pierce's trial for two reasons. First, federal law on the issue—whether it violates due process for prosecutors to impeach a defendant's trial testimony by highlighting

---

[6] 426 U.S. 610 (1976).

[7] *State v. Van Huizen*, 2019 UT 1, ¶ 30, 435 P.3d 202 (alteration in original) (citation omitted).

[8] *State v. Maestas*, 2012 UT 46, ¶ 37, 299 P.3d 892 (citation omitted) (internal quotation marks omitted).

exculpatory details not provided to police — was not clear at the time of Mr. Pierce's trial. Second, during Mr. Pierce's trial, there was a court of appeals opinion on the books that arguably would have allowed the State's actions. We therefore hold that the district court did not plainly err.[9]

### A. Federal Law Is Not Clear on the Issue

¶24  As stated above, the issue presented in this case is whether it violates due process for prosecutors to impeach a defendant's trial testimony by pointing out that the testimony contains exculpatory (but consistent) detail not included in the defendant's post-*Miranda* statements to law enforcement. A review of federal caselaw demonstrates that this issue is not settled.

¶25  In *Doyle v. Ohio*, the United States Supreme Court considered the question of "whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest."[10] In that case, each of the defendants had been given *Miranda* warnings and chose to remain silent in the face of questioning.[11] When the defendants provided exculpatory testimony at trial, the prosecutors impeached the defendants' testimony by highlighting the fact that neither of them presented their story to the police.[12] The Court held that the prosecutors' cross-examination violated due process.[13] It reasoned that because *Miranda* warnings contain an

---

[9] We decline to address the first element of plain error (whether an error occurred) because of our general practice to "avoid addressing constitutional issues unless required to do so." *Gardner v. State*, 2010 UT 46, ¶ 93, 234 P.3d 1115 (citation omitted); *see also State v. Argueta*, 2020 UT 41, ¶ 55, 469 P.3d 938 (holding that when "answering [a] constitutional question . . . would require a venture into murky waters," "resolving the constitutional question would go against our approach to judging"). Accordingly, we resolve the issue presented in this case on the second element of plain error review, that the error must have been obvious to the district court.

[10] 426 U.S. 610, 611 (1976) (citation omitted).

[11] *Id.* at 613–16.

[12] *Id.* at 613–14.

[13] *Id.* at 617–18.

"implicit" assurance that "silence will carry no penalty," it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."[14]

¶26  Later, in *Anderson v. Charles*, the Court considered whether a *Doyle* violation occurs when prosecutors point out inconsistencies between a defendant's post-*Miranda* statements to police and the defendant's trial testimony.[15] In *Charles*, the defendant was arrested while driving a stolen car.[16] Because the rightful owner of the car had recently been strangled to death, law enforcement suspected that the defendant committed the murder.[17] The police informed the defendant of his *Miranda* rights, after which he told them he stole the car from an area a few miles away from the local bus station.[18] But at trial, the defendant testified that he stole the car from a different location.[19] The prosecutor impeached the defendant's testimony with his prior inconsistent statement to the police, which the defendant claimed constituted a *Doyle* violation.[20]

¶27  The Court disagreed, holding that while "*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances," it does not apply "to cross-examination that merely inquires into prior inconsistent statements."[21] The Court reasoned that such questioning "makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all."[22] The Court did note that while "[e]ach of two inconsistent descriptions of events may be said to involve 'silence' insofar as it

---

[14] *Id.* at 618.

[15] 447 U.S. 404, 408 (1980).

[16] *Id.* at 404.

[17] *Id.* at 404–05.

[18] *Id.* at 405.

[19] *Id.*

[20] *Id.* at 405–06.

[21] *Id.* at 408.

[22] *Id.*

omits facts included in the other version," *Doyle* did not "require any such formalistic understanding of 'silence.'"[23]

¶28 Mr. Pierce argues that the differences between his statements to the police and his trial testimony are "consistent, but incomplete" and fall somewhere on the spectrum between *Doyle* and *Charles*. The United States Supreme Court has not ruled on whether impeachment with these kinds of statements violates *Doyle*, and we recently noted that "[o]ther jurisdictions have taken varied positions" on the issue.[24] Given that federal law governing the issue in this case is conflicting and unsettled, the district court did not plainly err in allowing the State to impeach Mr. Pierce's trial testimony with his consistent, but incomplete, statements to the police.[25]

---

[23] *Id.* at 409.

[24] *Argueta*, 2020 UT 41, ¶ 49; *see also, e.g., United States v. Caruto*, 532 F.3d 822, 831 (9th Cir. 2008) ("Even in [*Miranda*] non-invocation cases in this and other circuits, the differences between the post-arrest statement and the trial testimony must be 'arguably inconsistent'; mere omissions are not enough to justify cross-examination or argument regarding what was not said at the time of arrest." (collecting cases)); *United States v. Butler*, 924 F.2d 1124, 1129 (D.C. Cir. 1991) (holding that "insofar as the prosecutor's questions and comments related to [the defendant's] failure to fully explain" his story, "they were outside the scope of the *Doyle* rule").

[25] Mr. Pierce acknowledges that we left the issue of selective silence open in *Argueta*. He nevertheless argues that, under the unique circumstances of his case, the alleged constitutional error was obvious to the district court for four reasons: (1) the court had already ruled that Mr. Pierce's selective silence could not be used against him in a different context; (2) the court suppressed Mr. Pierce's statements; (3) the probative value of the silence was low; and (4) the prosecutor's use of Mr. Pierce's silence was pervasive. But because these arguments do not address whether "the law governing the error was clear at the time the alleged error was made," they are irrelevant. *Maestas*, 2012 UT 46, ¶ 37, (citation omitted). We accordingly decline to address them.

*B. Utah Law Arguably Would Have Allowed the State's Use of Mr. Pierce's Pre-Trial Statements at the Time of His Trial*

¶29 In holding that any alleged error would not have been clear to the trial court, we also find it important that in July 2018, a few months before Mr. Pierce's trial, our court of appeals decided *State v. Argueta*, in which that court held that there is "no difference in impeaching a defendant's prior inconsistent statement and impeaching a prior statement that omitted exculpatory details where a defendant 'has not been induced to remain silent.'"[26] This holding arguably would have permitted the State's actions. Though we later affirmed the court of appeals' decision in *Argueta* on different grounds and stated that our affirmance should not be viewed "as an implicit endorsement" of the court of appeals' determination of the issue,[27] the court of appeals' decision was on the books at the time of Mr. Pierce's trial. Because a court of appeals decision existed at the time of Mr. Pierce's trial that arguably would have allowed the State's impeachment,[28] we cannot say that the district court plainly erred.[29]

---

[26] 2018 UT App 142, ¶ 29, 429 P.3d 764 (citing *Charles*, 447 U.S. at 408).

[27] *Argueta*, 2020 UT 41, ¶ 49 n.11.

[28] Like we did in our opinion in *Argueta*, *see id.*, we emphasize that our opinion in this case should not be viewed as an implicit endorsement of the court of appeals' holding that there is "no difference in impeaching a defendant's prior inconsistent statement and impeaching a prior statement that omitted exculpatory details where a defendant 'has not been induced to remain silent.'" *Argueta*, 2018 UT App 142, ¶ 29 (quoting *Charles*, 447 U.S. at 408). We have not decided the issue, which we leave for another day.

[29] For the first time on certiorari, Mr. Pierce contends that because his statements to the police had been suppressed, the State's comments were also unconstitutional under *Harris v. New York*, 401 U.S. 222 (1971) and *Kansas v. Ventris*, 556 U.S. 586 (2009), cases he claims establish a rule that statements obtained in violation of *Miranda* are "only admissible to impeach inconsistencies or perjury." But because Mr. Pierce never raised this issue before the court of appeals, the issue is waived. *DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995) ("Issues not raised in the court of appeals may not be raised on certiorari unless the issue arose for the first time out of the court of

(continued . . .)

## II. Sufficient Evidence Exists to Support the Jury's Verdict

¶30 In addition to his due process claim, Mr. Pierce argues that the evidence was insufficient to support his conviction, claiming that witness testimony that a bullet never went through the longboard should be disregarded as inherently improbable and arguing that the evidence generally was insufficient to disprove his self-defense claim beyond a reasonable doubt. The State responds that Mr. Pierce's inherent improbability argument is waived and that sufficient evidence exists to support the jury's verdict.

¶31 At the outset, we decline to reach the inherent improbability issue because, even if we assume that the issue is not waived and discount the testimony Mr. Pierce finds problematic, there is still sufficient evidence to support the verdict.[30] There is sufficient evidence for a reasonable jury to have found that neither Mr. Pierce nor Brother were in imminent danger of death or serious bodily

---

appeals' decision."). Though we decline to decide the issue, we note that *Harris* and *Ventris* arguably do not support Mr. Pierce's conclusion—for while those cases say that statements obtained in violation of *Miranda* may be used to impeach inconsistencies or perjury, they do not say that such statements may *only* be used to impeach inconsistencies or perjury. *See Harris*, 401 U.S. at 226; *Ventris*, 556 U.S. at 593–94.

[30] Though we do not address Mr. Pierce's inherent improbability argument, there remains an issue as to whether a reasonable jury would have entertained doubt regarding his guilt because of the conflicting trial testimony. But conflicting trial testimony does not, on its own, necessarily lead to the conclusion that the evidence is insufficient to support a jury verdict. This is so because the "jury serves as the exclusive judge of both the credibility of the witnesses and the weight to be given particular evidence." *State v. Prater*, 2017 UT 13, ¶ 31, 392 P.3d 398 (emphasis omitted) (citation omitted). Because the jury is entitled to discount testimony for lack of credibility, we must uphold the verdict if sufficient evidence exists that, "*if believed by the jury*," would establish all elements of the crime. *State v. Lenzing*, 688 P.2d 492, 493 (Utah 1984) (emphasis added). As we explain in this opinion, sufficient evidence exists to establish each element of Mr. Pierce's conviction, and because the jury could have reasonably credited this evidence and discounted conflicting evidence, we must uphold the verdict.

injury when Mr. Pierce shot Mr. Toala and that Mr. Toala was not committing a forcible felony at the time of the shooting.

¶32 "A defendant has a 'substantial burden on appeal to show that the trial court erred in denying a motion for directed verdict.'"[31] "On a sufficiency of the evidence claim we give substantial deference to the jury,"[32] and "a sufficiency of the evidence inquiry ends if there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made."[33] In sum, "we examine whether the evidence is sufficiently inconclusive or inherently improbable such that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted."[34]

¶33 When a criminal defendant raises a claim of self-defense in response to murder charges, "the prosecution has the burden to prove beyond a reasonable doubt that the killing was not in self-defense."[35] So in this case, we must uphold the verdict unless "no evidence exist[s] from which a reasonable jury could find beyond a reasonable doubt that [Mr. Pierce] did not act in self-defense."[36]

¶34 Mr. Pierce was convicted of manslaughter based on imperfect self-defense. Utah Code section 76-5-203(4)(a)[37] states that "[i]t is an affirmative defense to a charge of murder . . . that the defendant caused the death of another . . . under a reasonable belief that the circumstances provided a legal justification or excuse for the conduct although the conduct was not legally justifiable or excusable under the existing circumstances." When this defense is established,

---

[31] *State v. Stricklan*, 2020 UT 65, ¶ 30, 477 P.3d 1251 (citation omitted).

[32] *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664.

[33] *State v. Gardner*, 2007 UT 70, ¶ 26, 167 P.3d 1074 (citation omitted) (internal quotation marks omitted).

[34] *State v. Jok*, 2021 UT 35, ¶ 29, 493 P.3d 665 (citation omitted) (internal quotation marks omitted).

[35] *State v. Knoll*, 712 P.2d 211, 214 (Utah 1985).

[36] *State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168.

[37] Because the shooting happened in 2016, we cite to the 2016 version of the Utah Code.

the charge is reduced from murder to manslaughter.[38] Under Utah's self-defense statute, Utah Code section 76-2-402(1)(b), a person has legal justification or excuse in using deadly force "only if the person reasonably believes that force is necessary to prevent death or serious bodily injury to the person or a third person as a result of another person's imminent use of unlawful force, or to prevent the commission of a forcible felony."

¶35 By convicting Mr. Pierce of manslaughter based on imperfect self-defense, the jury necessarily concluded that Mr. Pierce reasonably believed that the circumstances provided a legal justification for shooting Mr. Toala but that the shooting was not actually justified under the existing circumstances. So under the statutes quoted above, we must affirm the jury's verdict if there is evidence based on which, under the "existing circumstances," a reasonable jury could conclude that Mr. Pierce's conduct was not legally justified. We hold that a reasonable jury could have found that Mr. Pierce's conduct was not legally justified under the existing circumstances because sufficient evidence exists that Mr. Toala did not pose an imminent threat of death or serious bodily injury to Mr. Pierce or Brother and that Mr. Toala was not committing a forcible felony at the time of the shooting. We accordingly uphold the verdict.[39]

¶36 Viewing the facts in the light most favorable to the jury's verdict—as we must—there is ample evidence that Mr. Toala did not

---

[38] UTAH CODE § 76-5-203(4)(c) (2016); *see also id.* § 76-5-205(1)(b) (2016) (criminal homicide constitutes manslaughter if the "offense is reduced pursuant to Subsection 76-5-203(4)").

[39] The State also argues there was sufficient evidence for the jury to conclude that Mr. Pierce was the "aggressor" under Utah Code section 76-2-402(2)(a)(iii), which would also negate Mr. Pierce's argument that his conduct was legally justified. But we need not reach this argument because if Mr. Toala posed no imminent threat of death or serious bodily injury and was not committing a forcible felony at the time Mr. Pierce shot him, Mr. Pierce's conduct would not be legally justified regardless of whether he was the aggressor. Accordingly, because we conclude that a reasonable jury could have found that Mr. Toala posed no imminent threat and was not committing a forcible felony, we need not address whether Mr. Pierce was the aggressor.

present an imminent threat of death or serious bodily injury to either Mr. Pierce or Brother. The jury heard testimony that, at the time Mr. Pierce shot Mr. Toala, the two were standing as far as eighteen or nineteen feet apart and that Mr. Toala was holding up his board defensively "like a shield" to protect himself. There was also testimony that Mr. Toala had not acted aggressively and that the altercation had been merely verbal until Mr. Pierce pulled out a gun. The jury "is the exclusive judge of credibility,"[40] and if it credited this testimony, it could have reasonably concluded that neither Mr. Pierce nor Brother were confronted with a threat of "death or serious bodily injury" as a result of an "imminent use of unlawful force."[41]

¶37 The self-defense statute also justifies using deadly force "to prevent the commission of a forcible felony."[42] Utah Code section 76-2-402(4) defines a forcible felony to include a multitude of crimes (such as aggravated assault, murder, and aggravated kidnapping) and "[a]ny other felony offense which involves the use of force or violence against a person so as to create a substantial danger of death or serious bodily injury." As discussed above, there was evidence that Mr. Pierce and Mr. Toala were standing eighteen to nineteen feet apart, that Mr. Toala was not being aggressive, and that Mr. Toala was merely using his longboard as a shield at the time Mr. Pierce shot him. This evidence would support a jury's decision that Mr. Toala was not committing a forcible felony (or any other crime, for that matter) when Mr. Pierce fired the gun. We accordingly conclude that sufficient evidence exists to support the jury's verdict that Mr. Pierce committed manslaughter based on imperfect self-defense.

## Conclusion

¶38 We hold that the district court did not plainly err in allowing the State to impeach Mr. Pierce's trial testimony by highlighting the fact that the testimony contained exculpatory (but consistent) detail not provided to police. Federal caselaw on whether the State's actions violated due process is unsettled and, in any event, a court of appeals opinion existed at the time of Mr. Pierce's trial that arguably would have permitted the State's actions. Given these facts, any alleged error would not have been obvious to the

---

[40] UTAH CODE § 78B-1-128(4) (2016).

[41] Id. § 76-2-402(1)(b) (2016).

[42] Id.

district court. We also affirm the district court's denial of Mr. Pierce's motion for directed verdict because sufficient evidence exists to support the jury's conclusion that Mr. Pierce committed manslaughter based on imperfect self-defense. We affirm.

———————

JUSTICE PETERSEN, concurring in part and concurring in the result:

¶39 I concur in the result of the majority opinion and most of the majority's analysis. I write separately only to note my disagreement with the majority's analysis in Part I.A. of the opinion. There, the majority states that federal law is unsettled as to "whether it violates due process for prosecutors to impeach a defendant's trial testimony by pointing out that the testimony contains exculpatory (but consistent) detail not included in the defendant's post-Miranda statements to law enforcement." *Supra* ¶ 24. For the reasons set forth in Justice Lee's concurrence in *State v. Argueta*, which I joined, I conclude that federal precedent—and our own case law—make clear that the State did not impermissibly comment on Mr. Pierce's silence. 2020 UT 41, ¶¶ 75–116, 469 P.3d 938 (Lee, J., concurring) (arguing that *Doyle v. Ohio*, 426 U.S. 610 (1976), and *Anderson v. Charles*, 447 US 404 (1980), stand for the proposition that while the prosecution is prohibited from "commenting on a suspect's invocation of and reliance on the Miranda right to remain silent as a basis for an inference of guilt," this prohibition does not apply when "the defendant has not exercised the right to remain silent but instead has spoken voluntarily to police . . . ."); see also *State v. Velarde*, 675 P.2d 1194, 1195 (Utah 1984) (per curiam) (explaining that a defendant can voluntarily waive their Fifth Amendment guarantee to remain silent "by talking freely with [an] officer" after receiving their Miranda warning).