**2024 UT App 15**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ZACHARY MIKE CESSPOOCH,
Appellant.

Opinion
No. 20210552-CA
Filed February 8, 2024

Eighth District Court, Vernal Department
The Honorable Clark A. McClellan
No. 181800546

Wendy M. Brown, Debra M. Nelson, and
Benjamin Miller, Attorneys for Appellant

Jaymon Thomas and Jarell A. Dillman,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and JOHN D. LUTHY concurred.

TENNEY, Judge:

¶1     When Zachary Cesspooch arrived at the Vernal courthouse one day in June 2018, he was asked to empty his pockets while walking through security. Cesspooch pulled out a baggie that had a small amount of white, crystal-like residue inside. The residue was later confirmed to be methamphetamine. Cesspooch was later charged with two crimes: possession or use of a controlled substance, which is a class A misdemeanor, and possession or use of drug paraphernalia, which is a class B misdemeanor. At trial, the court read an elements instruction that informed the jury of the classifications for both crimes. Defense counsel did not object. At the close of trial, the jury convicted Cesspooch of the

paraphernalia charge but acquitted him of the controlled substance charge.

¶2    On appeal, Cesspooch argues that the court committed plain error when it informed jurors of the classifications for the offenses. Alternatively, he argues that his counsel was ineffective for not objecting to the instruction. As explained below, we agree that the court obviously erred by giving the instruction. But we also conclude that Cesspooch has not established that he was prejudiced. As a result, we reject both challenges and affirm Cesspooch's conviction.

BACKGROUND[1]

¶3    One day in June 2018, Cesspooch walked into the Eighth District Courthouse in Vernal. While passing through security, Cesspooch was asked to empty his pockets and put the contents in a bin. Cesspooch complied without reservation. One of the items that Cesspooch removed from his pocket was a small baggie that had a "very small amount" of what one officer observed to be a "powdery substance" inside. Another officer who saw the baggie later said that he saw a "white crystalish [sic] substance" inside that was "kind of grainy."

¶4    The security officer (Security Officer) was a former detective, and she thought that the baggie and substance looked suspicious. She asked Cesspooch, "What's that?" Cesspooch said that he didn't know. Security Officer stored the baggie in the court's security room and asked Cesspooch to wait in a less busy area. She then called the Vernal City Police Department. A police

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Suhail*, 2023 UT App 15, n.1, 525 P.3d 550 (quotation simplified), *cert. denied*, 531 P.3d 730 (Utah 2023).

officer (Officer) responded to the call and, after visiting with Security Officer, met with Cesspooch. When Officer asked Cesspooch what was in the baggie, Cesspooch again said that he "didn't know," but this time he surmised that it "could possibly be soap." Cesspooch acknowledged that "he had pulled that bag out of his pocket and set it in" the bin, but he claimed that "he didn't know where it had come from" and that he "just picks up random things and throws them away." Officer placed Cesspooch under arrest and booked him into jail for possession of methamphetamine and drug paraphernalia. Tests later confirmed that the substance in the baggie was methamphetamine.

¶5    Cesspooch's case went to trial. At the beginning of trial, the court read a series of preliminary instructions to the jury. One of these was Instruction Number 3, which set forth the elements of the charged offenses. Of note for this appeal, this instruction also informed the jury of the classifications for the two offenses—namely, that the possession or use of a controlled substance charge was a class A misdemeanor and that the possession of drug paraphernalia charge was a class B misdemeanor. Defense counsel did not object to Instruction Number 3.

¶6    In its case, the State presented testimony from Security Officer, Officer, and the forensic scientist who had tested the residue inside the baggie. The defense did not call any witnesses. After hearing closing arguments from both sides, the jury retired for deliberations. The jury ultimately acquitted Cesspooch of possessing a controlled substance, but it convicted him of possessing drug paraphernalia.

ISSUES AND STANDARDS OF REVIEW

¶7    Cesspooch challenges his conviction on two related grounds. First, Cesspooch argues that that the district court plainly erred by instructing the jury on the classifications for the two charged crimes. "To prevail on plain error review, a

defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Pierce*, 2022 UT 22, ¶ 22, 511 P.3d 1164 (quotation simplified). Second, Cesspooch argues that his counsel was ineffective for not objecting when the court informed jurors of the classifications. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Suhail*, 2023 UT App 15, ¶ 72, 525 P.3d 550 (quotation simplified), *cert. denied*, 531 P.3d 730 (Utah 2023).

ANALYSIS

¶8    Cesspooch did not object when the court informed jurors about the classifications for the charged offenses. As a result, this issue is unpreserved. To prevail on appeal, Cesspooch must therefore show plain error, ineffective assistance of counsel, or exceptional circumstances. *See State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443. As noted, Cesspooch challenges his conviction on the basis of both plain error and ineffective assistance of counsel.

¶9    We'll start with Cesspooch's plain error claim. To succeed, Cesspooch must establish that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Pierce*, 2022 UT 22, ¶ 22, 511 P.3d 1164 (quotation simplified). "If any one of these requirements is not met, plain error is not established." *Johnson*, 2017 UT 76, ¶ 20 (quotation simplified).

¶10    The parties initially disagree about whether there was an obvious error. "Under a plain error standard of review, an error is obvious only if the law governing the error was clear at the time the alleged error was made." *Pierce*, 2022 UT 22, ¶ 23 (quotation simplified). As the State points out, no Utah case has specifically

held that it is error for a court to inform a jury of the classification for an offense. But even so, we agree with Cesspooch that it was obvious error for the court to do so here. And this is so because the underlying principle was sufficiently settled, and that principle alone would have shown the court that it could not inform the jury of these classifications. *See State v. Larsen*, 2005 UT App 201, ¶ 5, 113 P.3d 998 (noting that "an error is obvious if the law on the area was sufficiently clear" and the error was "so obviously improper that the trial court had an opportunity to address the error" (quotation simplified)).

¶11   "Generally speaking, it is the jury's duty to determine the innocence or guilt of the accused. The court's duty is to impose sentencing. Possible punishment, then, is usually not a proper matter for jury consideration." *State v. Cude*, 784 P.2d 1197, 1202 (Utah 1989) (quotation simplified). A number of cases have recognized this principle. *See, e.g., Rogers v. United States*, 422 U.S. 35, 40 (1975) (noting that a jury has "no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *State v. Gallegos*, 2018 UT App 112, ¶ 32, 427 P.3d 578 (concluding that the State "had no business bringing up sentencing at all" to the jury because it "added nothing to help jurors" make their determination of guilt or innocence); *State v. Blubaugh*, 904 P.2d 688, 701 (Utah Ct. App. 1995) (noting that "ordinarily, punishment is not the province of the jury" and suggesting that a "mention of punishment to the jury is an error"); *see also United States v. Greer*, 620 F.2d 1383, 1384–85 (10th Cir. 1980) (concluding that, "[a]bsent a statutory requirement that the jury participate in the sentencing decision," the jury should not be informed of possible penalties).

¶12   Here, it's true that Instruction Number 3 didn't inform jurors about punishment directly. But this instruction did inform jurors of the classifications of the offenses. And the classification of an offense is directly tied to its punishment—that's a key reason (if not *the* reason) for classifying criminal offenses at all. And the

Utah Code reflects this. The portion of the Utah Criminal Code that sets forth the "Classification of Offenses" is contained in Title 76, Chapter 3—and Chapter 3 is titled "Punishments." The code also provides that a "person adjudged guilty of an offense under this code shall be sentenced in accordance with the provisions of this chapter." Utah Code § 76-3-101(1). And that chapter then outlines the various offense classifications, *see id.* § 76-3-102, after which it provides sentencing guidelines based on those classifications, *see id.* §§ 76-3-103 to -105.

¶13 There may be some case in which it might be necessary to inform a jury of the classification for some past offense—if a defendant is charged with unlawfully possessing an item as a convicted felon, for example. But the State hasn't given us any reason to believe that these classifications would have helped this jury decide whether Cesspooch was guilty of these charged offenses. Without such a reason, the classifications would have been relevant only for sentencing. Since sentencing was the court's prerogative and not the jury's, we conclude that the court committed obvious error by instructing the jury about these classifications.

¶14 As indicated, however, it's not enough for Cesspooch to establish obvious error. He must also demonstrate that the obvious error was harmful. And to satisfy this burden, Cesspooch must show that, "absent the error, there is a reasonable likelihood of a more favorable outcome." *Pierce*, 2022 UT 22, ¶ 22 (quotation simplified). "As applied here, our prejudice analysis asks whether we remain confident that the verdict would be the same" had the improper information been excluded. *State v. McNeil*, 2016 UT 3, ¶ 31, 365 P.3d 699.

¶15 The wrinkle in this case is that while the jury convicted Cesspooch of the paraphernalia charge, it acquitted him of the drug charge. This case thus involves a split verdict. But because Cesspooch must demonstrate that there's a "reasonable

likelihood" that he would have received a "more favorable" outcome without the error, *Pierce*, 2022 UT 22, ¶ 22 (quotation simplified), he must demonstrate that there's a reasonable likelihood that he would have been acquitted on both charges if the court had not improperly instructed jurors about the classifications for the offenses. Two things persuade us that Cesspooch has not carried this burden.

¶16    First, when assessing the likely impact of an error such as this one, it's appropriate to consider the strength of the evidence as a whole. *See, e.g.*, *Gallegos*, 2018 UT App 112, ¶ 36. As we've explained in the somewhat related context of assessing an improper comment by a prosecutor, if "proof of [a] defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial, but when the evidence is less compelling we will more closely scrutinize the conduct." *Id.* (quotation simplified). Here, Cesspooch walked into a courthouse with a baggie in his pocket, that baggie had a white powdery substance inside, and that substance later tested positive for methamphetamine. None of this was disputed. Indeed, Cesspooch acknowledged to officers on the scene that "he had pulled that bag out of his pocket and set it in" the bin, thus admitting that he had knowingly possessed at least the baggie. The case therefore turned on whether Cesspooch knew what was inside. As noted, Cesspooch claimed that he didn't. But intent or knowledge "can be proven by circumstantial evidence," and a jury is "entitled to draw all reasonable inferences from the facts and from the actions of the defendant." *State v. Stricklan*, 2020 UT 65, ¶ 105, 477 P.3d 1251 (quotation simplified). We regard it as somewhat implausible that Cesspooch really did have a baggie in his pocket that had a "white crystalish [sic]" or "powdery substance" inside without knowing that it was a controlled substance such as methamphetamine. This is accordingly a case in which there was strong evidence of guilt.

¶17    Second, Cesspooch asks us to surmise that the improper language in the jury instruction harmed him. And it's possible that it did harm him—perhaps the jury was leaning toward acquitting him on both charges, and perhaps it then decided to convict him on one of the charges because it knew that the conviction would only be for a misdemeanor. But it's also possible that the classification information helped Cesspooch—perhaps the jury was leaning toward convicting him on both charges, and perhaps it then decided to acquit him on one of them because it knew that the acquitted charge would only be for a misdemeanor. *Cf. State v. Miller*, 2023 UT App 85, ¶ 36 n.7, 535 P.3d 390, *cert. denied*, 540 P.3d 78 (Utah 2023) ("We note that while a split verdict may be consistent with the notion that the jury was conflicted about the evidence or had some doubt about a victim's credibility, it may also just as legitimately suggest compromise or some leniency in favor of [the defendant]." (quotation simplified)). A third option seems possible too—perhaps the jury's decision to issue the verdict that it did had nothing to do with its knowledge of the classifications of these offenses. Perhaps that decision turned on something else entirely.

¶18    Working with the contextual cues that are available, it doesn't seem reasonably likely to us that this information is what drove the jury's decision. This information was given to the jury in the middle of an elements instruction (as opposed to being highlighted through its own separate instruction), and that elements instruction was given as part of a broader set of instructions at the beginning of trial. There was nothing in the moment that made this information stand out. If anything, it was somewhat buried, and the court never mentioned the information about the classifications again. Nor did the attorneys. At no point in this case did the attorneys bring the classifications up with any witness, nor did any attorney make these classifications the focus of any argument. This appeal may well have come out differently if it were otherwise. But on this record, there's little reason to

believe that the jury was focused on these classifications when it deliberated in this case.

¶19    In short, it's clear that something prompted the jury to issue this split verdict. But Cesspooch has not persuaded us that there's a reasonable likelihood that this verdict was influenced by the information the jury had received about the classifications of the offenses; and even if Cesspooch had, he also has not persuaded us that there's a reasonable likelihood that the effect was harmful to him (as opposed to being beneficial to him). For these reasons, we reject Cesspooch's claim for lack of prejudice.

¶20    For the same reason, we also reject Cesspooch's related claim of ineffective assistance. To prevail on this claim, Cesspooch must establish both deficient performance and prejudice. *See State v. Rivera*, 2022 UT App 44, ¶ 22, 509 P.3d 257. And as noted, the "prejudice test is the same whether under the claim of ineffective assistance or plain error." *McNeil*, 2016 UT 3, ¶ 29. Given that there was no prejudice for plain error purposes, there was likewise no prejudice for ineffective assistance of counsel purposes. We therefore reject this claim.

CONCLUSION

¶21    The district court obviously erred when it informed the jury of the classifications for the two charged offenses, but Cesspooch has not shown that this error prejudiced him. We thus affirm his conviction.

———————