**2024 UT App 191**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RICKEY SCOTT HARRIS,
Appellant.

Opinion
No. 20220791-CA
Filed December 27, 2024

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 211101374

Peter Daines, Attorney for Appellant

Sean D. Reyes and Jeffrey D. Mann,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

TENNEY, Judge:

¶1 Rickey Harris was charged with several offenses for violently attacking his wife (Wife). The case went to trial, and during closing arguments, the prosecutor suggested to the jury that, in light of the evidence that the State had presented, the presumption of innocence was now "gone." After deliberations, the jury convicted Harris of aggravated kidnapping, attempted aggravated assault, and assault with bodily injury.

¶2 On appeal, Harris argues that his trial counsel (Counsel) was ineffective for not objecting to the prosecutor's statement about the presumption of innocence. Alternatively, Harris argues that the district court committed plain error by failing to correct

the prosecutor's statement sua sponte. We reject both arguments and affirm Harris's convictions.

BACKGROUND[1]

*The Incident*

¶3    In November 2021, Harris and Wife had been married for several years. Their marriage had been "pretty good" at first, but in the previous year, Harris's behavior had "[c]hanged drastically." Harris had become "very agitated," "indifferent," "angry," and "controlling."

¶4    On the day before Thanksgiving, Harris became very angry with Wife when he couldn't find some food that he wanted. Harris then attacked Wife, wrapping a windbreaker around her neck tightly enough to leave "a mark," though not tightly enough to completely prevent her from breathing. Harris then shoved Wife to the ground, lifted her back up by her hair, pushed her down the hallway, and drove her back to the ground, "put[ting] all his weight on" her. Wife could "hear bones popping, breaking."

¶5    Wife managed to get up, and she retreated into their bedroom. Harris followed her, and once there, he told her, "Today is your last day on earth." Wife was "terrified" and "in complete shock." Wife then went into a bathroom and sat in the tub. Harris followed her into the bathroom and made statements that Wife interpreted as threats to her life.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Ames*, 2024 UT App 30, n.1, 546 P.3d 356 (quotation simplified), *cert. denied*, 550 P.3d 993 (Utah 2024).

¶6      After about ten minutes, Wife heard two people talking inside the home. Wife managed to leave the bathroom and went into the hallway, where she saw her sister (Sister), who had come over to drop off some pies for Thanksgiving. Wife later claimed that she told Sister that Harris had "just tried to beat the hell out of" her and that she asked if she could leave with Sister. For her part, Sister later said that she didn't remember Wife saying anything about "a fight," but Sister did remember sensing that "something was wrong." In the end, Wife did not leave with Sister.

¶7      A day or two later, Wife "noticed [a] mark" and "some bruising" on her neck, and she was also having trouble breathing. About a week after noticing the bruising, Wife went to a clinic and was seen by a doctor (Doctor). Doctor later testified that Wife seemed "anxious and frazzled." Wife "complain[ed] of right-sided rib pain and difficulty breathing," and an X-ray showed that she had a fractured rib. Doctor also observed an abrasion on the left side of Wife's neck, as well as bruising around her clavicle, shoulder, and breast. Wife told Doctor that it was "her husband who [had] inflicted wounds on her and had used a jacket to strangle her." Doctor contacted law enforcement, and a deputy (Deputy) came to the clinic to speak with Wife.

¶8      Deputy later said that Wife "was a little hesitant" to speak with him and that Wife seemed "frightened" and "scared." Deputy immediately noticed an "abrasion" on Wife's neck and "bruising on her collar bone." Deputy thought that Wife clearly explained what Harris had done to her and that Wife's story was internally "consistent" as she told it.

*Charges and Trial*

¶9      The State charged Harris with one count each of aggravated kidnapping, aggravated assault, and assault causing substantial bodily injury. In the summer of 2022, the case went to trial.

¶10    After a jury was picked and sworn in, the district court read preliminary instructions. In these instructions, the court told the jury, "The prosecution must prove each element beyond a reasonable doubt. Until then, you must presume the defendant is not guilty." The court further explained, "The law presumes the defendant is not guilty of the crimes charged. This presumption persists unless the prosecution's evidence convinces you beyond a reasonable doubt that the defendant is guilty."

¶11    During the State's case, Wife, Sister, Doctor, and Deputy testified to the events described above. The State also called a psychologist, who testified about domestic violence and about how trauma affects memory, as well as a nurse practitioner, who testified about the nature of the injuries that can result from strangulation. The defense did not call any witnesses. Instead, through his questioning of the State's witnesses, Counsel elicited information showing that Wife had given inconsistent accounts of the incident with Harris. Counsel also elicited information showing that Wife had made various claims about other incidents and other people that were arguably not true.[2]

¶12    Before closing arguments, the district court read final jury instructions. One of these was Instruction 22, which directed the jury as follows:

> Remember, the fact that the defendant is charged with a crime is not evidence of guilt. The law presumes that the defendant is not guilty of the crime(s) charged. This presumption persists unless the prosecution's evidence convinces you beyond a reasonable doubt that the defendant is guilty.

---

2. These included statements Wife had made about her current marital status, assertions she'd made about alleged threats to her life from other people, and statements that she'd made about other legal proceedings that she was involved in around the same time.

¶13  When the prosecutor began his closing argument, he talked about the dynamics associated with domestic violence, including that domestic violence "happens behind closed doors" and abusers "expect their victim to stay quiet." The prosecutor then commented on Harris's presumption of innocence. The prosecutor said:

> At the start of this trial, the defendant had the presumption of innocence. But now that presumption's gone. The evidence you've heard this week, the evidence shows beyond any reasonable doubt the defendant is guilty of each of the crimes charged.

Counsel did not object to this statement. Continuing with his closing argument, the prosecutor recounted Wife's testimony as well as the testimonies of Doctor and Sister, claiming that Doctor and Sister's testimonies corroborated Wife's account. Finally, the prosecutor discussed the charged crimes, reading the elements from the jury instructions and asserting that the evidence had proved each element.

¶14  In his closing argument, Counsel argued that Wife's "confidence in her story doesn't make it true." Counsel pointed to the inconsistencies in Wife's account of the incident with Harris and the various other things she'd said that were arguably not true, thus suggesting that she could not and should not be believed.

¶15  Toward the end of his closing, Counsel referred to Instruction 22, reminding jurors that it told them: "Remember, the fact that the defendant is charged with a crime is not evidence of guilt. The law presumes that the defendant is not guilty of the crimes charged. This presumption persists unless the prosecution's evidence convinces you beyond a reasonable doubt that the defendant is guilty." Counsel then argued:

> So in my mind, we start with the position that the defendant is not guilty. And then we go through those instructions, each one of those elements, one by one, and ask, did the prosecution prove to me beyond a reasonable doubt that this thing happened? And we work that way. I think that's important because it keeps the position of the defendant and the prosecution where they are supposed to be. The system is designed to work this way.

Counsel finished his closing argument by asking jurors to conclude that the State had not carried its burden of establishing Harris's guilt with proof beyond a reasonable doubt with respect to any of the charges.

¶16    After deliberations, the jury convicted Harris on the first count—aggravated kidnapping. On the second and third counts, the jury convicted Harris of the lesser included offenses of attempted aggravated assault and assault with bodily injury.

ISSUES AND STANDARDS OF REVIEW

¶17    On appeal, Harris challenges his convictions on two related grounds. First, Harris argues that Counsel provided ineffective assistance by not objecting to the prosecutor's statement in closing argument that the presumption of innocence was now "gone." "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Cesspooch*, 2024 UT App 15, ¶ 7, 544 P.3d 1046 (quotation simplified), *cert. denied*, 550 P.3d 994 (Utah 2024). Second, Harris argues that the district court plainly erred by failing to correct the prosecutor's statement sua sponte. "To prevail on plain error review, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of

a more favorable outcome for the appellant." *Id.* (quotation simplified).

ANALYSIS

¶18    Harris argues that Counsel provided ineffective assistance by not objecting or adequately responding to a statement the prosecutor made during closing argument about the presumption of innocence, and, alternatively, that the district court plainly erred by not correcting the statement sua sponte. We disagree on both fronts.

A.    Ineffective Assistance

¶19    To prevail on an ineffective assistance claim, a defendant must show (i) "that counsel's performance was deficient" and (ii) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant "must establish both prongs," and "if either is lacking, the claim fails and this court need not address the other." *State v. Ames*, 2024 UT App 30, ¶ 17, 546 P.3d 356 (quotation simplified), *cert. denied*, 550 P.3d 993 (Utah 2024).

¶20    "To establish deficient performance," a defendant "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* ¶ 18 (quotation simplified). "The focus of this inquiry is reasonableness," which is judged "as of the time of counsel's conduct." *Id.* (quotation simplified). In assessing such claims, our supreme court has recognized that defense counsel need not object to every objectionable error at trial in order to provide effective assistance. In *State v. Bonds*, for example, the supreme court held that "just because a legal error existed . . . does not necessarily mean that defense counsel's failure to object to the error amounted to deficient performance." 2023 UT 1, ¶ 43, 524 P.3d 581. And in *State v. Ray*, the court held that "[d]efense counsel did not have a Sixth Amendment obligation to correct every error

that might have occurred at trial, regardless of whether it affected the defendant. Counsel could pick his battles." 2020 UT 12, ¶ 32, 469 P.3d 871.

¶21 This appeal concerns a defense attorney's failure to object to a statement made by the prosecutor during closing argument. With respect to such claims generally, our supreme court has held that "the question is not whether the prosecutor's comments were proper, *but whether they were so improper* that counsel's only defensible choice was to interrupt those comments with an objection." *State v. Houston*, 2015 UT 40, ¶ 76, 353 P.3d 55 (emphasis in original, quotation otherwise simplified). And the supreme court has further "recognize[d] the prerogative of opposing counsel to swallow their tongue." *State v. Hummel*, 2017 UT 19, ¶ 110, 393 P.3d 314. We've recognized this too, pointing out that there are many "legitimate, strategic reasons" why an attorney might choose to not object to a statement made during closing argument. *State v. Isom*, 2015 UT App 160, ¶ 38, 354 P.3d 791. Such reasons include the possible fear "that objecting would call attention to the improper statements and suggest to the jury that they were damaging when counsel felt they were not," the concern that "the jury was weary and inattentive to the prosecutor and that objecting would only serve to focus their attention on the remark," and the "concern that an objection would create antipathy to the defense if the jury perceived that counsel's repeated objections were only prolonging the proceedings." *Id.* (quotation simplified).

¶22 As noted, the statement at issue here concerned the presumption of innocence. More specifically, during his closing argument, the prosecutor said, "At the start of this trial, the defendant had the presumption of innocence. But now that presumption's gone. The evidence you've heard this week, the evidence shows beyond any reasonable doubt the defendant is guilty of each of the crimes charged."

¶23 In Harris's view, Counsel should have objected to this statement. But we conclude that Harris has not established that

Counsel performed deficiently by not objecting. This is so for two interrelated reasons.

¶24 The first and primary reason has to do with the unsettled state of the law on this point—and, by extension, the possibility that the objection proposed by Harris on appeal might have been denied and could have even backfired.

¶25 In his opening brief, Harris argued that the prosecutor's statement was improper. And on first blush, there's some reason to think that he might be correct. Both the Utah Supreme Court and this court have previously said in passing that the presumption of innocence applies until the defendant has been *convicted*. *See Price v. Turner*, 502 P.2d 121, 122 (Utah 1972) ("After one has been convicted of [a] crime the presumption of innocence and other protections afforded an accused no longer obtain."); *Stewart v. State*, 830 P.2d 306, 308 (Utah Ct. App. 1992) ("While a defendant is entitled to a presumption of innocence before conviction, once he or she is convicted, the presumptions change . . . ."). And the United States Supreme Court has likewise said that the presumption applies "throughout the trial process" until "a jury returns a guilty verdict." *Martinez v. Court of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 162 (2000). Based on similar principles, Harris points to a number of cases from other jurisdictions in which courts held that statements like the one at issue were deemed impermissible. *See, e.g., State v. Decker*, 202 P.3d 669, 675–76 (Kan. 2009) (holding that a prosecutor's statement that "he's no longer presumed innocent" was "misconduct" (emphasis omitted)); *State v. Lawrence*, 2016 MT 346, ¶ 19, 385 P.3d 968 (holding that a prosecutor's statement that the "presumption of innocence that you came into this trial with no longer exists" constituted "misconduct requiring relief"); *Morales v. State*, 143 P.3d 463, 467 (Nev. 2006) (holding that a prosecutor's statement that "there was no presumption of innocence anymore" was "improper" and constituted "plain error" (quotation simplified)); *State v. Worth*, 218 P.3d 166, 170 (Or. Ct. App. 2009) (holding that a "prosecutor's statement that defendant 'does not sit before you presumed innocent'" was a "misstatement[] of the

law"); *Watts v. State*, 2016 WY 40, ¶ 12, 370 P.3d 104 (holding that a prosecutor's statement "that the presumption of innocence 'no longer exists'" constituted "[p]rosecutorial misconduct").

¶26 Even so, the State argued in its responsive brief that statements such as the one at issue may be permissible. Cases such as *Price* and *Stewart* addressed the presumption of innocence generally, but Harris and the State both recognized in their briefs that no Utah appellate case has addressed the more particular question of whether a prosecutor can make such a statement in a closing argument. In addition, we note that the Utah Code states that the presumption of innocence applies "until each element of the offense charged against [the defendant] is *proved* beyond a reasonable doubt." Utah Code § 76-1-501(1) (emphasis added). Taken at face value, this statute could suggest that the question turns on whether the State has presented sufficient *proof*, as opposed to whether the defendant has been *convicted*.

¶27 Perhaps most importantly, the State cited several cases from other jurisdictions in which courts held that a prosecutor does have leeway to argue in closing argument that the defendant should no longer be presumed innocent because the evidence presented at trial had now proven the defendant's guilt beyond a reasonable doubt. *See, e.g.*, *People v. Dalton*, 441 P.3d 283, 350, 352 (Cal. 2019) (holding that a prosecutor's statement that the defendant had a presumption of innocence "when we started this case," but "[n]ow that the evidence is here, now that you heard it all, it is gone," was not misconduct and was a permissible argument); *People v. McGee*, 2015 IL App (1st) 130367, ¶¶ 65–66, 44 N.E.3d 510 (holding that a prosecutor's statement—that "the evidence in this case, it's like the heat that removes the cloak of innocence. . . . [W]itness by witness, that presumption of innocence that they started this trial with has been slowly burned away"—was not improper); *State v. Young*, 710 N.W.2d 272, 280–81 (Minn. 2006) (holding that a prosecutor's statement—that defendant was "no long[er] an innocent man" because "[t]he evidence that's been presented to you by the state has shown you

that he's guilty beyond a reasonable doubt"—"was not a misstatement of the law, and did not constitute error").

¶28 In response to the State's authority, Harris conceded in his reply brief that "[t]he State is correct in arguing that a prosecutor may assert during closing argument that the presumption of innocence has been *overcome* by the State's evidence without committing misconduct." (Emphasis added.) But Harris nevertheless argued that the statement at issue here was still impermissible because the prosecutor suggested that the presumption of innocence "no longer *attached* to Harris at the time of closing." (Emphasis added.)

¶29 From all this, it appears to us that the law is unsettled on the very point that's at issue in this appeal. There's at least an argument to be made that, because our supreme court, this court, and the United States Supreme Court have all indicated that the presumption of innocence applies to the point of conviction, statements such as the one made by the prosecutor in this case are problematic. But none of those courts have addressed the full ramifications of the underlying principle on closing arguments. And although bound by the same constitutional principles, several other courts have concluded that, in an apparent nod to the latitude that a party has in making a closing argument, it is permissible for a prosecutor to suggest to jurors in a closing argument that the presumption has been rebutted by the evidence that was presented during the trial. And finally, in the face of such authority, Harris's appellate counsel now asks us to draw a somewhat subtle distinction between arguments about the presumption no longer *attaching* versus arguments about the presumption having been *overcome*, and he then argues that the prosecutor's comments here were improper under the terms of that distinction.

¶30 As noted, however, an ineffective assistance claim must be evaluated "as of the time of counsel's conduct." *Ames*, 2024 UT App 30, ¶ 18 (quotation simplified). In light of the legal uncertainty attendant to this question, Counsel could have

reasonably believed that if he had objected, the district court might overrule the proposed objection on legal grounds. In other words, because there is no controlling authority on this point, the court may have concluded (as other courts have concluded) that a statement such as the one made by the prosecutor here was fair game. Moreover, even if Counsel had been attuned to the proposed distinction that Harris's appellate counsel now advances, Counsel could have thought that the district court would think that the prosecutor's statement was permissible under that view of the law. After all, after the prosecutor suggested to jurors that the "presumption's gone," the prosecutor said in the very next sentence that "[t]he evidence you've heard this week, the evidence shows beyond any reasonable doubt the defendant is guilty of each of the crimes charged." In this sense, the prosecutor was arguably suggesting to the jury that the presumption no longer applied because it had been overcome by the State's evidence, which is the very thing that Harris now agrees was legally permissible.

¶31    In light of all this, Counsel could have reasonably believed "that an objection would backfire" by "call[ing] attention" to the prosecutor's comments and then "focus[ing]" the jury's attention on them. *Isom*, 2015 UT App 160, ¶¶ 38–39 (quotation simplified). And given the possibility that the court might deny the objection, Counsel could have also reasonably believed that this would give "some appearance of judicial approval" or "official imprimatur" to the prosecutor's comments. *Mahorney v. Wallman*, 917 F.2d 469, 473 & n.4 (10th Cir. 1990). Put simply, because of the uncertainties in the law, an objection was far from certain to succeed, and it might also focus the jury's attention on the very statement that Harris now finds to be so troubling. Counsel's decision to refrain from objecting therefore was not objectively unreasonable.

¶32    The second reason why Harris's deficient performance claim fails has to do with how Counsel chose to respond below instead. In other cases involving ineffective assistance claims based on an attorney's failure to object to a statement made during closing argument, we've recognized that a defense

attorney may reasonably decide that, "rather than highlight[ing] the overall issue for the jury," counsel will instead address the issue "during [counsel's] own closing argument." *State v. Bermejo*, 2020 UT App 142, ¶ 90, 476 P.3d 148 (quotation simplified); *see also State v. Mason*, 2024 UT App 171, ¶ 41, -- P.3d -- (noting that counsel reasonably "chose to respond to the prosecutor's closing argument through a responsive closing argument of his own, as opposed to making an objection").

¶33   As discussed, during his own closing, Counsel read Instruction 22 to the jury, thus reminding them that, in the court's words, the "law presumes that the defendant is not guilty of the crimes charged" and that the "presumption persists unless the prosecution's evidence convinces you beyond a reasonable doubt that the defendant is guilty." With this as the springboard, Counsel then argued that jurors should "start with the position that the defendant is not guilty," that they should "go through those instructions, each one of those elements, one by one, and ask, did the prosecution prove to me beyond a reasonable doubt that this thing happened," and that "work[ing] that way" is "important because it keeps the position of the defendant and the prosecution where they are supposed to be" because the "system is designed to work this way." By doing so, Counsel directly responded to the prosecutor's arguments by reiterating that Harris was presumed innocent and then arguing that the presumption had not been overcome. Given the uncertainty in the law discussed above, Counsel could reasonably think that this was the optimal approach, because approaching the problem this way allowed Counsel to remind jurors of the presumption of innocence without the potential exposure that would come if an objection to the prosecutor's statement was overruled in front of the jury.

¶34   In short, because Counsel did not object below, we have no occasion to directly confront the question of whether statements such as those made by the prosecutor are improper. And even with this opinion, we regard that as an open question. But the question before us in this appeal is whether Counsel provided

ineffective assistance by not objecting. Because no controlling case has confronted the underlying question, and because there's some reason to think that the district court would have overruled the objection on either legal or contextual grounds, we conclude that the statement at issue was not "*so improper* that counsel's only defensible choice was to interrupt those comments with an objection," *Houston*, 2015 UT 40, ¶ 76 (emphasis in original, quotation otherwise simplified). Counsel could reasonably decide to not object and instead respond by making his own argument about the presumption of innocence in his own closing argument. We therefore reject Harris's ineffectiveness claim for a lack of deficient performance.[3]

B.      Plain Error

¶35      In addition to asserting ineffective assistance, Harris also argues that the district court "plainly erred by failing to correct the prosecutor's statement *sua sponte*." We disagree.

¶36      One of the requirements of plain error is that the error must "have been obvious to the trial court." *State v. Cesspooch*, 2024 UT App 15, ¶ 7, 544 P.3d 1046 (quotation simplified), *cert. denied*, 550 P.3d 994 (Utah 2024). "An error is obvious only if the law governing the error was clear at the time the alleged error was

---

3. In his brief, Harris repeatedly argues that Counsel performed deficiently by not "objecting" to the prosecutor's statement. At times, he also relatedly argues that Counsel performed deficiently by not "correcting the prosecutor's misstatement of law" himself in his own closing argument. To the extent that this was intended to be a separate ineffective assistance claim, we reject it for the same reasons given above—namely, (i) because the law was (and remains) uncertain in Utah on whether such statements are impermissible, there was nothing definitive for Counsel to "correct," and (ii) in any event, Counsel adequately responded by making an argument in his closing that emphasized his view of how the presumption of innocence should be applied in Harris's favor.

made." *Id.* ¶ 10 (quotation simplified). But an error is not obvious if there is "no Utah case law addressing this specific factual scenario" and the law that did exist at the time does "not clearly encompass" the situation in question. *State v. Van Huizen*, 2019 UT 1, ¶ 31, 435 P.3d 202.

¶37 As discussed, at the time of Harris's trial, no controlling case had addressed a prosecutor's ability to argue in closing that the presumption of innocence no longer applied, much less drawn a particular distinction between a prosecutor's ability to argue that the presumption no longer attached and a prosecutor's ability to argue that it had been overcome by the evidence. Harris's plain error claim thus fails.

CONCLUSION

¶38 Counsel did not provide ineffective assistance by failing to object to the prosecutor's statement in closing argument that Harris's presumption of innocence was "gone," and the district court did not plainly err by failing to correct the statement sua sponte. We therefore affirm Harris's convictions.[4]

————————

4. Harris's appellate arguments are based solely on the prosecutor's closing argument. In its responsive brief, the State, on its own, pointed out that with respect to the third charge, the jury convicted Harris of the lesser included offense of assault with bodily injury, which is a class B misdemeanor, but the district court mistakenly entered judgment on the original charge of assault with substantial bodily injury, which is a class A misdemeanor. The State accordingly suggested that we should remand the case to the district court so that the court can correct the error. In his reply brief, Harris did not acknowledge or respond to this issue.

We appreciate the State's diligence and candor. In similar circumstances, however, we've recognized that a district court "is

(continued…)

able" to make such a correction "at any time" under rule 30(b) of the Utah Rules of Criminal Procedure. *State v. Cady*, 2018 UT App 8, ¶ 41 n.9, 414 P.3d 974. As a result, while we have no need to formally remand for correction of this error, we recognize that Harris may "make the appropriate motion to the trial court" himself as he sees fit. *Id.*