**2025 UT App 143**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
KENNETH PAUL POLA,
Appellant.

Opinion
No. 20240338-CA
Filed October 9, 2025

Third District Court, West Jordan Department
The Honorable Matthew Bates
No. 231902314

Janet Lawrence, Attorney for Appellant

Simarjit S. Gill and Steven C. Gibbon,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN FORSTER and DAVID N. MORTENSEN
concurred.

TENNEY, Judge:

¶1      Kenneth Pola was sitting in the doorway of an abandoned restaurant on a winter day when an officer approached him and suggested that Pola might be trespassing. When the officer ran Pola's name through a police database, the officer learned that Pola had several outstanding arrest warrants. Pola became agitated, and when the officer and his backup attempted to arrest Pola, Pola resisted and spat in both of their faces.

¶2      Pola was later charged with two counts of propelling an object or substance at an officer. The case went to trial, and a jury convicted Pola as charged. On appeal, Pola argues that the jury instructions should have defined the terms "lawful arrest" and

"probable cause," and he further argues that the instructions incorrectly suggested that there was no mens rea for the element of whether Pola was a "prisoner." Pola also argues that there was insufficient evidence to show that he was a prisoner at the time he spat at the officers. For the reasons set forth below, we affirm.

## BACKGROUND[1]

### *The Events*

¶3     On February 23, 2023, a sergeant (Sergeant) saw Pola sitting outside the door of an abandoned restaurant. Sergeant "immediately recognized" that Pola was homeless because Pola had a sleeping bag and other possessions with him. The restaurant was marked with a "no trespassing" sign and Sergeant thought that Pola might be violating that prohibition. Sergeant approached Pola and asked "if he [was] aware that he was trespassing, and [Pola] said, 'Yes.'" As the conversation continued, Pola became "agitated" and "kept saying that he was going to call the FBI or he wanted [Sergeant] to call the FBI and have [Sergeant] arrested for assault." It appeared to Sergeant that Pola was on drugs.

¶4     Sergeant called for backup, and another officer (Officer) soon arrived on the scene. Sergeant asked Pola for his name, and he then went to his patrol vehicle and ran a "records check" to see if Pola had "any warrants or any other issues." Sergeant later explained that this is "a routine part" of "investigating a possible crime or a suspicious activity." Sergeant discovered that Pola "had several warrants for assault and trespassing and disorderly

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Suhail*, 2023 UT App 15, n.1, 525 P.3d 550 (quotation simplified).

conduct," and Sergeant decided that he "was going to arrest [Pola] on those warrants."

¶5 Sergeant returned to Pola and Officer, placed Pola in handcuffs, and "told him he was under arrest for . . . his warrants."[2] Sergeant then took Pola back to the "marked patrol vehicle" to place him in the back seat. At this point, Pola had become "extremely agitated."

¶6 Pola sat down in the vehicle, but "he didn't want to get all the way into the vehicle." When Sergeant "told him that he needed to get into the vehicle," Pola spat in Sergeant's face, and Pola's saliva landed on Sergeant's cheek and forehead. Sergeant responded by "turn[ing] [Pola's] head away . . . and pinning him against the seat so he couldn't move his head or spit on" Sergeant again. Officer went to the opposite side of the vehicle to assist Sergeant in putting Pola's seat belt on. When Officer leaned into the vehicle, Pola said, "Shut the fuck up," and then spat on Officer's face. Pola's saliva landed "[a]ll over [Officer's] face, mostly the forehead, and some of it went inside [his] mouth." At this point, the officers put a spit hood on Pola.

*Charges and Trial*

¶7 Pola was later charged with two counts of propelling an object or substance at an officer in violation of Utah Code section 76-5-102.6.[3]

---

2. This quotation comes from Sergeant's trial testimony. Our review of the body camera footage confirms that as Pola was being arrested, Sergeant told him, "You got a bunch of warrants, you're going to go to jail for them."

3. The State also charged Pola with one count of criminal trespass. At the preliminary hearing, however, the State conceded that it would "not be able to produce sufficient evidence for the

(continued…)

¶8      At trial, the State presented its case through testimonies from both Sergeant and Officer, as well as through footage from their body cameras. The State then rested, at which point Pola did not make a directed verdict motion.

¶9      Pola testified in his own defense. Pola explained that he was sitting under the "cover" of the restaurant, which, in his view, "was not illegal" because "it was snowing badly." Pola said that he "was waiting for some friends that were helping [him] out" because someone "stole over $4 million from [him] and they didn't want to pay." When Pola was asked who stole the money, Pola responded, "Well, West Valley stole it. Salt Lake City stole it. South Salt Lake stole it. My employer stole it. Midvale City stole it. The sheriff's office confessed on themselves." When Pola was asked why he kept referring to the FBI during the interaction with Sergeant and Officer, Pola responded,

> Well, because I worked for the FBI my entire life. And when they arrested me, I looked over the cop's shoulder, and they said I have—do drugs, in their computer. Fifty years. Never has happened. That's fraud and perjury. I did not commit a crime. They just didn't want to pay for it. Their own judges said those trespasses were illegal. The cops said, "Ken did not commit a crime."[4]

¶10      On cross-examination, the State asked Pola whether the officers told him why he was being arrested. Pola initially said that "[n]one of them did" and that he "already went to court on"

---

trespassing count," and the court later dismissed that count without prejudice.

4. During the early stages of the case, Pola's trial counsel raised a question about Pola's competency to proceed. Pola was subsequently evaluated and, after a hearing, was found to be competent. On appeal, Pola does not raise any issues related to his competency.

his warrants. But when Pola was asked again if the officers told him that he was "being arrested on warrants," Pola responded, "Yeah." Pola admitted that he spat at one of the officers, and he also said he "did that under duress and mental anguish" and that "[i]t was no crime because they arrested [him] on fraudulent charges." When asked which officer he spat on, Pola said he had "no recollection" but that "it doesn't matter" because he "didn't commit a crime" and officers "can't arrest people and create the crime."

¶11 Before trial, the parties submitted proposed jury instructions outlining the elements of the offense of propelling an object or substance at an officer. Pola's proposed instruction read as follows:

1. Kenneth Pola

2. Intentionally, knowingly, or recklessly;

3. Threw or propelled an object or substance;

4. At a peace officer; and

5. Was a prisoner or a detained individual.

¶12 The district court initially adopted Pola's proposed instruction, but the court subsequently amended it after a discussion with the parties regarding where the mens rea should be placed within the instruction. During this discussion, the State asserted that "[t]he element of the person being a prisoner or detained person" should be moved "up to Element Number 2 so that there isn't confusion about whether or not the mens rea applies to . . . that element." When the State further asserted that "both parties agree that there is no mens rea for that specific element," Pola's counsel responded, "That's correct." The court then said, "All right. So that element is currently Number 5. I'll move it up and make it Number 2 so that now the last element will be 'at a peace officer, to-wit,' and then the officer's name."

¶13    The jury was ultimately given two instructions (Instruction 22 and Instruction 23) that outlined the elements of the offense of propelling an object or substance at an officer. Instruction 22 read:

> Mr. Pola is charged in Count 1 in the Information with Propelling a Substance at a Peace Officer on or about February 23, 2023. You cannot convict him of this offense unless, based on the evidence, you find beyond a reasonable doubt each of the following elements:
>
> 1.  Kenneth Pola;
>
> 2.  Was a prisoner or a detained individual;
>
> 3.  Intentionally, knowingly, or recklessly;
>
> 4.  Threw or propelled an object or substance; and
>
> 5.  At a peace officer, to wit, [Sergeant].
>
> After you carefully consider all the evidence in this case, if you are convinced that each and every element has been proven beyond a reasonable doubt, then you must find Mr. Pola GUILTY of Propelling a Substance at a Peace Officer, as charged in Count 1 of the Information. On the other hand, if you are not convinced that each and every element has been proven beyond a reasonable doubt, then you must find Mr. Pola NOT GUILTY.

Instruction 23 was identically worded, except it referred to "Count 2" and named Officer instead of Sergeant in the fifth listed element.

¶14    The jury was also given an instruction (Instruction 24) that defined various terms, including the following:

> "Detained individual" means an individual detained by a peace officer when the officer has reasonable suspicion to believe the individual has committed or is in the act of committing or is attempting to commit a public offense.
>
> "Prisoner" means an individual who is in custody of a peace officer pursuant to a lawful arrest or who is confined in a jail or other penal institution or a facility used for confinement of delinquent juveniles operated by the Division of Juvenile Justice Services regardless of whether the confinement is legal.
>
> "Object or substance" includes saliva or other bodily fluids.

¶15    In its closing argument, the State pointed to the definition of prisoner provided in Instruction 24 and argued that Pola was "a prisoner" because "[h]e was lawfully arrested for those warrants." The State conceded that "had this been completely out of bounds and a completely unlawful arrest, then maybe . . . [Pola] has a point." The State then argued that Pola spat on the officers intentionally or knowingly because "you don't just sort of accidentally spit in two different people's faces and actually hit them in the face if . . . you're not doing it intentionally and you're not doing it knowingly."

¶16    In the defense's closing, Pola's counsel argued that "this arrest didn't need to occur" because these are "the kinds of warrants that [Sergeant] said didn't require an arrest."[5] Pola's

---

5. This was an apparent reference to an exchange that occurred during cross-examination. When Sergeant was asked whether he needed "to actually arrest [Pola] on any of" the warrants, he

(continued…)

counsel also argued that Sergeant should have used his "de-escalation training" instead of "amping [Pola] up" and "add[ing] gas to a fire that didn't need gas."

¶17　The jury convicted Pola on both counts.

ISSUES AND STANDARD OF REVIEW

¶18　Pola first argues that the district court erred by not instructing the jury on what constituted a lawful arrest and on the definition of probable cause, and he further argues that the court erred by not instructing the jury that the mens rea applied to the element of him being a prisoner. Pola next argues that the court erred in submitting the case to the jury because, in his view, there was insufficient evidence to show that he was detained pursuant to a lawful arrest. Pola did not preserve these issues below, but he asserts that the plain error exception to our preservation rules applies. "Because a claim of plain error . . . involves no lower court ruling, we decide the claim in the first instance as a matter of law." *State v. Dew*, 2025 UT App 22, ¶ 28, 566 P.3d 53, *cert. denied*, 568 P.3d 264 (Utah 2025).

ANALYSIS

I. Jury Instructions

¶19　Under Utah Code section 76-5-102.6(2), a person "commits the offense of propelling an object or substance at a correctional or peace officer" if the person "(a) is a prisoner or a detained individual; and (b) throws or otherwise propels an object or substance at a peace officer, a correctional officer, or an employee

---

responded that he arrested Pola "due to his demeanor . . . and the warrants," and "[n]ot just because he [was] belligerent to me, but because normally when we see that, . . . they become problematic for other people throughout the city."

or volunteer, including a health care provider."[6] On appeal, Pola claims that the elements instructions that were given to the jury were flawed on two interrelated grounds.

¶20     First, Pola focuses on the term "prisoner." For purposes of this offense, the controlling statute defines "prisoner" as "an individual who is in custody of a peace officer pursuant to a lawful arrest or who is confined in a jail or other penal institution," Utah Code § 76-5-101(2), and the jury was instructed accordingly. The statute does not define "lawful arrest," however, and the jury was given no instruction defining that term.

¶21     In Pola's view, "lawful arrest" is a legal term of art that needed to be defined. *See State v. Ames*, 2024 UT App 30, ¶ 22, 546 P.3d 356 ("Legal terms of art . . . generally ought to be explicitly explained to a jury." (quotation simplified)), *cert. denied*, 550 P.3d 993 (Utah 2024). Pola then quotes *State v. Nimer* for the proposition that a lawful arrest is one in which the officer had "probable cause to believe an offense ha[d] been committed or is being committed, and a reasonable and prudent person in the officer's position must have been justified in believing that the suspect had committed the offense," 2010 UT App 376, ¶ 7, 246 P.3d 1194 (quotation simplified), and Pola argues that the jury should have been instructed accordingly here.[7] From there, Pola argues that since

_____

6. This statute was amended shortly after the events in question, but because the relevant statutory language remained unchanged, we cite to the current version for convenience.

7. In *State v. Nimer*, 2010 UT App 376, 246 P.3d 1194, we considered the meaning of a "lawful arrest" for purposes of the Fourth Amendment, while the case before us arises under Utah Code section 76-5-101(2). It's not clear to us whether this distinction might matter in terms of how that term should be defined in the respective contexts. As discussed shortly, however, we ultimately resolve this issue on lack of prejudice. In doing so, we'll assume for purposes of this appeal that Pola's proposed definition applies to this statute.

"probable cause" is a key component of that proposed definition, and since probable cause is also a legal term of art, probable cause should have been defined for the jury in the instructions as well.

¶22    Second, Pola claims that the instructions incorrectly suggested that the mens rea did not apply to the element of whether he was a prisoner. Pola points to *State v. Barela*, in which our supreme court held that an instruction setting forth the elements of rape was "in error" because it "coupl[ed] the mens rea directly with the element of sexual intercourse" but "articulat[ed] the element of . . . nonconsent without any apparent counterpart requirement of mens rea." 2015 UT 22, ¶ 26, 349 P.3d 676. The supreme court explained that Utah's "criminal code requires proof of mens rea for each element of a non-strict liability crime," and it then concluded that the instruction in question erroneously "implied" that the mens rea "applied *only* to the act of sexual intercourse, and not to [the victim's] nonconsent." *Id.* (emphasis in original).

¶23    Pola also points out that other decisions have made the same conceptual point that a jury must be instructed on the mens rea for each element. *See, e.g.*, *State v. Bird*, 2015 UT 7, ¶ 17, 345 P.3d 1141 (noting that jury instructions "must include a mens rea for all elements"); *State v. Pearson*, 1999 UT App 220, ¶ 12, 985 P.2d 919 ("By selectively applying the mens rea to some, but not all, of the elements of the offense, the jury could easily have believed [the] defendant was strictly liable for [the final element]."). From all this, Pola argues that because the mens rea was listed after the prisoner element in these instructions, this sequencing incorrectly suggested to the jury that there was no mens rea for the element of whether Pola was a prisoner.[8]

---

8. To be clear, this is not the position that Pola ultimately took below. As noted, Pola initially proposed an instruction that listed the mens rea before the prisoner element. But after the State

(continued…)

¶24 As noted, Pola acknowledges that both of these claims were unpreserved. As a result, he asks us to review both of them for plain error. To show plain error, Pola must establish that (i) an error existed; (ii) the error should have been obvious to the district court; and (iii) the error was harmful. *See State v. Harris*, 2024 UT App 191, ¶ 17, 562 P.3d 1215, *cert. denied*, 564 P.3d 961 (Utah 2025). "Notably, we need not address the error or obvious error prongs of this test" if we conclude that Pola "has not established prejudice." *State v. Brown*, 2025 UT App 31, ¶ 27, 566 P.3d 737. This is so here.

¶25 To show prejudice for purposes of plain error, an appellant must demonstrate that "there is a reasonable probability that, but for the error, the result of the proceeding would have been different." *Id.* ¶ 28 (quotation simplified). When assessing prejudice in the plain error context, we "consider the totality of the evidence before the judge or jury, as well as the circumstances of the case as a whole." *Id.* (quotation simplified). "And we further consider the counterfactual scenarios, including what would have happened but for the claimed error." *Id.* (quotation simplified).

¶26 Pola argues that if the jury had been properly instructed on what constituted a lawful arrest, including the definition of probable cause, and if the jury had also been instructed that the mens rea applies to the prisoner element, there is a reasonable likelihood that the jury would have acquitted him. In support, Pola largely relies on the portions of his trial testimony in which he said that he did not believe there were any valid warrants at

---

asserted that the mens rea did not apply to the prisoner element, Pola's trial counsel affirmatively agreed with that proposition.

In theory, the State could have asserted that the invited error doctrine forecloses Pola's claim. But the State doesn't ask us to affirm on that basis. To the contrary, it asserts that there was no error at all because, in its view, the mens rea does not apply to the prisoner element in this statute. We need not definitively decide this question, however, because, as set forth below, we conclude that Pola was not prejudiced by the alleged error.

the time of the encounter. From this, Pola contends that there's a reasonable probability that a properly instructed jury would have concluded (1) that there was no basis to lawfully arrest him (thus negating the prisoner element) and/or (2) that he did not possess the requisite mens rea as to whether he was a prisoner. Even assuming for the sake of argument that the district court should have given the instructions proposed by Pola, we conclude that Pola has not shown that he was prejudiced.

¶27 We start with the question of whether the arrest was "lawful," which Pola contends turns on the question of whether there was probable cause. As the State points out, the evidence showed that Sergeant ran a records check on Pola in a police database, at which point he discovered that Pola had outstanding arrest warrants for assault, trespassing, and disorderly conduct. While Pola later claimed at trial that those warrants were invalid, there's no clear indication that he said so to the officers at the time. This is fatal to his claim.

¶28 As it's commonly defined, "probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing the suspect has committed, is committing, or is about to commit an offense." *State v. McLeod*, 2018 UT App 52, ¶ 11, 424 P.3d 1039 (quotation simplified). The question of whether "probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time." *State v. Hinmon*, 2016 UT App 215, ¶ 18, 385 P.3d 751 (quotation simplified). In making such an assessment, an officer can act on "reasonably trustworthy information." *State v. Beckstrom*, 2013 UT App 104, ¶ 9, 300 P.3d 773 (quotation simplified).

¶29 Pola points to no authority indicating that a police database does not constitute "reasonably trustworthy information," much less establishing that an officer cannot reasonably rely on information about outstanding warrants that the officer learns from a database. And since there's no clear indication that the

officers were told anything at the scene about the alleged invalidity of the warrants, let alone given anything resembling conclusive proof that there were no such warrants, there's no indication that they had anything other than probable cause to believe that Pola was subject to arrest.[9]

¶30   We're likewise not persuaded that Pola was prejudiced by the alleged error in the instructions regarding mens rea. The statute does not include a mens rea for this offense. *See* Utah Code § 76-5-102.6. Under Utah Code section 76-2-102, "when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility."

---

9. In the body camera footage, Pola was recorded muttering at times, and the muttering is somewhat unintelligible. Even if it were possible that, in the course of this muttering, he somehow communicated to the officers his belief that the warrants were invalid, the officers could hardly be expected to adjudicate those claims at the scene. Instead, what they had in front of them were seemingly valid arrest warrants. This allowed them to arrest Pola, and if Pola had some basis for challenging the warrants, he could certainly make such arguments later before a court. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1434 (10th Cir. 1984) ("Police do not violate the Constitution when they arrest a person relying in good faith on a warrant that appears on its face to be valid but later proves deficient."), *rev'd on other grounds sub nom., City of Lawton v. Lusby*, 474 U.S. 805 (1985); *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) ("An arrest is valid . . . if the warrant underlying it was supported by probable cause at the time of its issuance; this holds true even if later events establish that the target of the warrant should not have been arrested." (quotation simplified)). At minimum, we're not persuaded that there's a reasonable likelihood that, if the jurors had been told that the officers needed probable cause to arrest Pola, they would have concluded that officers did not have probable cause if Pola had somehow communicated that he believed the warrants were invalid.

By statute, a person acts recklessly when he or she "is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist." *Id.* § 76-2-103(3).

¶31 Even accepting Pola's contention that the jury should have been told that the mens rea for this offense applied to the prisoner element, we see no reasonable probability that the verdict would have been different. As discussed, after Sergeant ran Pola's name through a police database, he informed Pola that the database showed that Pola had outstanding arrest warrants. As just explained, the officers were entitled to then arrest him on those warrants.

¶32 Nothing in this record definitively shows that the warrants didn't exist or were somehow invalid.[10] Thus, even if it were true that Pola thought there was something amiss with those warrants, on this record, he was at least disregarding a substantial and unjustifiable risk that the database was right and his personal beliefs were wrong. As a result, Pola was likewise disregarding a substantial and unjustifiable risk that he was subject to lawful arrest—and, thus, that he might be subject to any criminal penalties that might hinge on the officers' ability to arrest him. We're therefore not persuaded that there is a reasonable likelihood that, if the jury had been instructed differently, it would have concluded that Pola was not at least reckless as to whether he was subject to lawful arrest.

¶33 For these reasons, we reject Pola's claims regarding the jury instructions for lack of prejudice.

## II. Insufficient Evidence

¶34 Pola next argues that there was insufficient evidence to show that he "believed he was detained pursuant to a lawful

---

10. Even with the benefit of both trial and appellate counsel, Pola has not pointed to anything showing that the database was incorrect or that the warrants were later shown not to exist.

arrest." Because this case was ultimately submitted to a jury, Pola is in effect arguing that he was entitled to a directed verdict.

¶35 A directed verdict is warranted only when, "viewed in the light most favorable to the State, *no evidence exist*[*s*] from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *Brown*, 2025 UT App 31, ¶ 15 (emphasis in original, quotation otherwise simplified). But "if there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged, the court must submit the case to the jury." *State v. Torres*, 2018 UT App 113, ¶ 17, 427 P.3d 550 (quotation simplified).

¶36 Pola did not move for a directed verdict at trial, so he again asks us to review for plain error. "To establish plain error based on insufficient evidence, a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *State v. Prater*, 2017 UT 13, ¶ 28, 392 P.3d 398 (quotation simplified).

¶37 As noted above, the evidence showed that Sergeant conducted a records check on Pola and discovered that Pola had multiple outstanding warrants. The evidence also showed that Sergeant informed Pola of these warrants before arresting him. Given this, even with Pola's apparent belief that the warrants were invalid, there was some evidence from which the jury could reasonably conclude that Pola was at least reckless as to whether he was subject to a lawful arrest. We therefore reject this claim.

CONCLUSION

¶38 For the foregoing reasons, we affirm Pola's convictions.

―――――――